# DUNPHY *v.* RYAN.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

Argued January 15, 1886.—Decided January 25, 1886.

An agreement, on the part of A to acquire title in his own name to a tract of land upon the best terms possible, and when acquired to convey to B an undivided part thereof, and on the part of B to pay to A his proportionate part of the purchase money and expenses incurred in obtaining title, is a contract for the sale of lands within the Statute of Frauds : and the contract being verbal and not in writing as required by the Statute, A, after performing his part of the agreement, cannot recover from B his share of the price and expenses in an action at law founded upon and seeking to enforce the contract; nor in equity, under a statute which prescribes the same forms at law and in equity, when the pleadings show no allegation to lay a foundation for equitable relief.

Under the statute law of the Territory of Montana there is no distinction between legal and equitable remedies, and there is "but one form of action for the enforcement or protection of private rights and the redress or prevention of private

wrongs," which is " the same at law and in equity." Revised Statutes of Montana of 1879, page 41. This law being in force, James M. Ryan, the defendant in error, brought this suit in the District Court for the Third Judicial District in the County of Lewis and Clarke, Montana Territory, against Elijah M. Dunphy, the plaintiff in error, to recover judgment against the latter on his promissory note for $1511.50, dated June 1, 1879, and payable to the plaintiff in error on December 1st following.

The defendant admitted in his answer the execution and delivery of the note, and that it had not been paid, and, by way of cross-action and counterclaim, alleged that in February, 1879, one Rumsey and one Embrey were the owners of certain placer mining ground, with the appurtenances particularly described, situate in Grizzly Gulch, Minnesota Mining District, in Lewis and Clarke County, Montana, and that at the time mentioned, the defendant being in negotiation for the purchase thereof, entered into a contract with the plaintiff, which is thus stated in the defendant's answer :

" The said defendant was to effect the purchase of the two-thirds of the above-described property upon the best terms possible, exercising and using his best judgment for the joint use and benefit of said plaintiff and defendant; that the title thereto and all deeds of conveyance for the said interest in and to said premises and property were to be taken in the name of the defendant herein, and that the plaintiff herein was not to be known in the transfers and purchase until such time as the purchase was completed and all of the conveyances executed, and when so completed and a good and sufficient title acquired to said property by defendant, the defendant was to make and deliver to the said plaintiff a good and sufficient deed of conveyance for the undivided one-third thereof ; and that upon the execution and delivery of such deed the said plaintiff promised and agreed to pay to this defendant the one-third of all moneys paid by him as the consideration for such conveyance and transfer, and the one-half of all expenses incurred and paid in and about obtaining the title to the said property as aforesaid."

The answer further averred, in substance, that on July 26, 1879, the defendant had acquired a complete and perfect title to the entire interest and estate in said property by conveyances from Rumsey and Embrey; that the consideration for said conveyances was $5200, and the expenses incident to acquiring the title were $2200, and that on the day last mentioned the plaintiff was indebted to the defendant, under said contract, on account of the said purchase and expenses, in the sum of $1935.51, and that on that day he tendered to the plaintiff a good and sufficient deed for the one undivided third of said property, and demanded of him the payment of the last-mentioned sum of money, and the plaintiff refused to receive the deed or pay the money demanded of him, and denied the existence of the agreement above set forth. The defendant therefore prayed judgment against the plaintiff for the sum of money so demanded, with interest from July 26, 1879.

The plaintiff filed a replication, in which he denied that he ever made the contract set out in the answer.

Upon the trial of the cause, as appeared by the bill of exceptions, the defendant being upon the stand as a witness in his own behalf, and having stated that he did, in February, 1879, enter into a verbal contract with the plaintiff for the purchase of the mining ground described in the answer, and that there was no written agreement, was asked to state what the agreement was. "The plaintiff objected to the witness answering said question, for the reason that the agreement, not being in writing," was "void by the statute of frauds. The court sustained the objection and refused to permit the said witness to answer the question." "The defendant then proposed to prove by said witness the truth of the matters alleged and set up in his answer, and read the same to the court. The court refused to permit the defendant to prove said matters on the ground that the said matters rested in parol and were not in writing." The defendant excepted to these rulings. There being no further evidence the jury returned a verdict for the plaintiff for $1733, the amount due on the note sued on, for which sum the court rendered judgment against the defendant.

Upon appeal by the defendant to the Supreme Court of the

Territory this judgment was affirmed. By the present writ of error the defendant seeks a reversal of the judgment of affirmance.

*Mr. M. F. Morris* for plaintiff in error.

I. It is of no consequence whether the set-off or counterclaim interposed as a defence is a legal or equitable one. Law and equity proceedings are blended by the laws of Montana, and such laws have been sustained by this court. *Hornbuckle* v. *Tombs,* 18 Wall. 648.

II. The Statute of Frauds of 29 Charles II. has been re-enacted in Montana with some modification. The Statute of Charles II. provided that the agreement or memorandum should be signed by the party to be charged therewith. The Statute of Montana, it will be noticed, requires signature only by the lessor or vendor, and therefore seems to imply that, as to the lessee or purchaser, no writing is necessary.

III. It would appear as if the territorial court had treated the case of the plaintiff in error as though it were one for the specific performance of a verbal contract for the sale and purchase of lands. It is respectfully submitted : 1st, that this is not the correct view of the case ; and 2d, that even if it were, the plaintiff in error was entitled to recover.

IV. "If one has voluntarily done a thing which, being within the statute, he could not have been compelled to do, he may enforce payment of it—that is, recover the consideration orally agreed—from the other." Bishop on Contracts, §§ 503, 535, 545. If a conveyance is actually made, any oral promise to pay for the land is good. This is the tenor of all the authorities on the subject. *Phillips* v. *Thompson,* 1 Johns. Ch. 131 ; *Parkhurst* v. *Van Cortlandt,* 1 Johns. Ch. 273 ; *Baker* v. *Wainwright,* 36 Maryland, 336 ; *Green* v. *Drummond,* 31 Maryland, 71 ; *Nutting* v. *Dickinson,* 8 Allen, 544 ; *Philbrook* v. *Belknap,* 6 Vt. 383 ; *Ray* v. *Young,* 13 Texas, 550 ; *Zabel* v. *Schroeder,* 35 Texas, 308 ; *Sims* v. *McEwen,* 27 Ala. 184 ; *Knowlman* v. *Bluett,* L. R. 9 Exch. 1 ; *Swain* v. *Seamens,* 9 Wall. 254.

V. No doubt it will be objected here, as it was in the court

below, if we may judge from the opinion filed in the case, that in order to "establish a resulting trust the purchase-money must be the property of the party paying it at the time of payment;" in other words, that if the plaintiff in error pays his own money, and not that of the defendant in error, there is no resulting trust, and no relation of principal and agent. But the answer to this is, that, if the plaintiff in error advances his own money for the use and benefit of the defendant in error, the payment is a loan to the latter in contemplation of law, and thereby becomes the money of the defendant in error.

*Mr. Edwin W. Toole* and *Mr. Joseph K. Toole* for defendant in error.

Mr. JUSTICE WOODS delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The defendant insists that the court erred in refusing to allow him to prove the contract set up in his answer. The statute law of Montana applicable to the question in hand is as follows: Chapter XIII., Art. I., of the Revised Statutes of Montana of 1879 provides as follows:

"Section 160. No estate or interest in land, other than for leases for a term not exceeding one year, or any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing."

"Section 162. Every contract for the leasing for a longer time than one year, or for the sale of any lands or interest in lands, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made."

The denial in the replication of the plaintiff of the making of the contract on which the defendant based his cross-action is as effective for letting in the defence of the statute of frauds

as if the statute had been specifically pleaded. *May* v. *Sloan*, 101 U. S. 231; *Buttimere* v. *Hayes*, 5 M. & W. 456; *Kay* v. *Curd*, 6 B. Mon. 100. The question is, therefore, fairly presented, whether the contract alleged in the answer of the defendant, not being in writing, is valid and binding under the statutes of Montana.

We cannot doubt that the contract which the defendant seeks to enforce is a contract for the sale of lands. According to the averments of the answer it was this: The plaintiff, being in treaty for the purchase of the lands, agreed with the defendant to acquire title to the undivided two-thirds thereof in his own name upon the best terms possible, and, when he had acquired the title, to convey to the plaintiff, by a good and sufficient deed, an undivided third of the premises, for which the plaintiff promised to pay the defendant one-third of the purchase-money, and one-half the expenses incurred in obtaining the title. This is simply an agreement of the defendant to convey to the plaintiff a tract of land for a certain consideration. It, therefore, falls precisely within the terms of section 162, above quoted. It is a contract for the sale of lands, and, not being in writing signed by the vendor, is void. The circumstance that the defendant, not owning the land which he agreed to convey, undertook to acquire the title, instead of taking the case out of the statute, brings it more clearly and unequivocally within its terms. A contract void by the statute cannot be enforced directly or collaterally. It confers no right and creates no obligation as between the parties to it. *Carrington* v. *Roots*, 2 M. & W. 248; *Dung* v. *Parker*, 52 N. Y. 494. The defendant must, therefore, fail in his cross-action, unless he can take his case out of the operation of the statute of frauds.

The defendant seeks to evade the effect of the statute by the argument that in the transaction set out in his answer he was acting as the agent of the plaintiff as well as for himself, and that, having as such agent paid for the share of the land which he had agreed to convey to the plaintiff, he is entitled to recover back the price, as for money paid out and expended for the plaintiff at his request.

. It is well settled that when one person pays money or per-
forms services for another upon a contract void under the
statute of frauds, he may recover the money upon a count
for money paid to the use of defendant at his request, or re-
cover for the services upon the *quantum meruit* count.
*Wetherbee* v. *Potter,* 99 Mass. 354; *Gray* v. *Hill,* Ryan &
Moody, 420; *Shute* v. *Dow,* 5 Wend. 204; *Ray* v. *Young,* 13
Texas, 550. But in such cases the suit should be brought upon
the implied promise. *Buttimere* v. *Hayes,* 5 M. & W. 456;
*Griffith* v. *Young,* 12 East. 513; *Kidder* v. *Hunt,* 1 Pick. 328.
Clearly the present case does not belong to that class. Here
the suit is based upon, and its purpose is to enforce the void
contract.

The cause of action set up in the defendant's answer is that
the plaintiff, having contracted to purchase the land and receive
a conveyance therefor, became liable, upon a tender to and re-
fusal by him of the deed, to pay the agreed price. This is a suit
upon the express contract. There is no implied contract on
which the cross-action can rest, for the law implies a contract
only to do that which the party is legally bound to perform.
As the express contract set up by the defendant was void under
the statute, the plaintiff was not bound in law to accept the
deed tendered him by the defendant or pay the purchase
money. The defendant paid no money to or for the plaintiff.
The money paid out by him was to enable him to perform his
contract with the plaintiff. He paid it out for himself and
for his own advantage. The plaintiff has received neither the
money nor the land from the defendant. Neither reason nor
justice dictate that he should pay the defendant the price of the
land, and therefore the law implies no provision to do so. 2 Bl.
Com. 443; *Ogden* v. *Sanders,* 12 Wheat. 213, 341. The cross-
action cannot, therefore, be sustained on any supposed implied
promise of the plaintiff.

But the defendant's counsel further insist that there has been
such a part performance of the contract as entitles the defend-
ant to equitable relief, on the ground that it would be a fraud
on him not to enforce the contract.

The case, as stated in the defendant's answer, is not, either

in the averments or prayer, one for equitable relief. There is no averment, and no proof was offered, that the refusal of the plaintiff to accept the deed and pay the purchase price of the land has subjected the defendant to any loss. His answer avers that before he made his contract with the plaintiff he was negotiating with the owner for the purchase of the land. It is not alleged that he would not have purchased the land if he had not made his contract with the plaintiff. There is no averment that the land is not worth, or that it cannot be sold for, all it cost him. As between these parties there has been no payment, no possession, and no improvements. The only complaint of misconduct on the part of the plaintiff which can be inferred from the pleadings is his refusal to perform a verbal contract for the purchase of lands. But the mere breach of a verbal promise for the purchase of lands will not justify the interference of a court of equity. *Purcell* v. *Miner*, 4 Wall. 513. There is no fraud in such a refusal. The party who so refuses stands upon the law and has a right to refuse. Under the circumstances of this case the statute is as binding on a court of equity as on a court of law. If the mere refusal of a party to perform a parol contract for the sale of lands could be construed to be such a fraud as would give a court of equity jurisdiction to enforce it, the statute of frauds would be rendered vain and nugatory. The defendant knew or ought to have known that the statute requires such a contract as the one he seeks to enforce to be evidenced by writing. That he did not exact a contract in writing is his own fault. Courts of equity are not established to relieve parties from the consequences of their own negligence or folly.

The statute of frauds is founded in wisdom and has been justified by long experience. As was said by Mr. Justice Grier, in *Purcell* v. *Miner, ubi supra,* the statute "is absolutely necessary to preserve the title to real property from the chances, the uncertainity, and the fraud attending the admission of parol testimony." It should be enforced. Courts of equity, to prevent the statute from becoming an instrument of fraud, have in many instances relaxed its provisions. But this case is barren of any averment or proof, or offer of proof, which ought to

induce a court of equity to afford relief. It follows that neither in a court of law nor a court of equity can the defendant maintain his suit on the cause of action set up in his answer by way of counter-claim or cross-action.

*Judgment affirmed.*