## HOOPER v. FIRST EXCHANGE NAT. BANK OF CŒUR D'ALENE et al.
### No. 6481.

Circuit Court of Appeals, Ninth Circuit.
Nov. 9, 1931.

Rehearing Denied Dec. 7, 1931.

Fred B. Morrill and James P. Dillard, both of Spokane, Wash., for appellant.

William B. McFarland, of Cœur D'Alene, Idaho, for appellees.

Before WILBUR and SAWTELLE; Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

The litigation involved in this appeal arises out of an oral agreement for the sale of an interest in real estate located in the state of Washington. The action was brought in the District Court of the United States for the District of Idaho. The record in the case is in a most unsatisfactory condition. To properly lay out before the mind the questions presented for decision, it is necessary to go into the pleadings at considerable length. In his complaint appellant alleged in substance that in July, 1925, the appellee bank was the owner of an undivided one-half interest in certain farm lands lying in Adams and Whitman counties in the state of Washington, the other one-half interest therein belonging to appellant; that at the time stated E. E. Flood, as the president of the bank, by oral agreement sold to appellant the bank's one-half interest in these lands, and agreed to deliver to him a written contract duly and properly executed by the bank evidencing the oral agreement; that simultaneously therewith appellant executed and delivered to Flood a promissory note for $10,000 payable to the bank, upon the promise of Flood that the bank would execute the written contract contemplated; that subsequently this note was renewed; that the bank failed, neglected, and refused to execute the written contract in accordance with the verbal agreement; that in the meantime, and upon the assurances of Flood that the bank would execute a written contract, appellant paid in principal and interest on the note and in taxes on the property purchased amounts totaling $4,417.35; that at the time of the oral agreement the Federal Land Bank of Spokane, Wash., held a mortgage on the lands agreed to be purchased, and that appellant paid as interest on the bank's share of this indebtedness the sum of $651.95; that, by reason of these payments, there was due appellant from the bank the sum of $5,069.30; that because of the failure of the bank to execute the written contract contemplated by the parties, appellant received no consideration for the promissory note and was therefore entitled to cancellation and return of the note together with judgment for the sum of $5,069.30 paid out by him as already mentioned; that the bank failed and refused to pay its share of the Federal Land Bank note and mortgage, and also failed to pay the taxes on its one-half interest in the lands, and in consequence the mortgage was foreclosed and the lands sold under execution; and that thereby the bank placed itself in such a position that it could not and did not give appellant any consideration for the promissory note or the payments made by appellant. The prayer of the complaint is for, first, judg-

ment for the sum of $5,069.30 with legal interest; second, for the cancellation and return of appellant's promissory note held by the bank; and third, "for such other, further and different relief as to the Court may seem just and equitable in the premises." Appellees attacked the complaint by motion to dismiss the action upon the ground, among others, that the complaint did not state sufficient facts to constitute a cause of action. This motion was denied by the court.

Whilst the complaint is inartificially drawn and does not define the theory upon which a recovery is sought with very much clarity, the pleading is open to the construction that the appellant was treating the oral agreement, unsupported by the written contract, as void under the statute of frauds, and was seeking the recovery of the amount of the payments made by him on an implied contract as for money had and received. It seems reasonably certain that this was the construction placed upon it by the trial judge, for, if he had regarded the complaint as stating an action for a breach of the express oral agreement, he would have granted appellees' motion to dismiss. The complaint on its face alleged an oral agreement for the sale of an interest in real estate, and consequently the appellees had the right to raise the question of the statute of frauds by demurrer or motion to dismiss. Equity rule 29 (28 USCA § 723); Simpkins' Federal Practice (Rev. Ed.) pages 667 and 668; Randall v. Howard, 2 Black (67 U. S.) 585, 17 L. Ed. 269. Construing the complaint as an action for the recovery of money which in the circumstances it would be unconscionable and inequitable for the appellees to retain, the motion to dismiss was properly denied. Dunphy v. Ryan, 116 U. S. 491–497, 6 S. Ct. 486, 29 L. Ed. 703; Purcell v. Miner, 4 Wall. (71 U. S.) 513–518, 18 L. Ed. 435; Trimble v. Donahey, 96 Wash. 677, 165 P. 1051. Following the denial of their motion to dismiss, appellees filed an answer denying all the material allegations of the complaint, and in addition pleaded a number of affirmative defenses and set up a counterclaim.

Passing by a maze of wholly irrelevant and redundant matter, the first affirmative defense sets forth, in substance, that during the month of July, 1925, while the appellant and the bank were the joint owners of the lands in question, it was agreed between them that the former would execute and deliver to the latter his promissory note for $10,000 bearing interest at 7 per cent. to be renewed from time to time, not to exceed two years, and that, when this note was paid, the bank would convey to appellant its one-half undivided interest in the lands subject to a mortgage to the Federal Land Bank of Spokane which appellant was to assume; that, in addition, he was to pay the taxes on the lands; that, pursuant to this agreement in July, 1925, appellant did execute and deliver to the bank his promissory note in the amount stated; that thereafter, and on August 11, 1925, the board of directors of the bank passed a resolution authorizing the officers of the bank to execute a deed to appellant for the bank's interest in the lands upon the payment by appellant of his promissory note; that appellant was advised of this resolution, and that the bank did not agree that any written contract was to be drawn other than this resolution; that the bank and its receiver at all times have been ready and willing to convey to appellant the bank's interest in the lands upon the payment by appellant of his promissory note; that the note had only been paid in part; that appellant had neglected to pay the principal or interest of the Federal Land Bank note and mortgage and permitted the taxes on the lands to become delinquent; that he suffered the mortgage to be foreclosed and the lands to be sold, and, by reason of these facts, was estopped to claim any relief against the appellees. For a second affirmative defense appellees alleged that appellant remained in possession of the premises, acquiesced in the verbal agreement, never demanded a written contract, defaulted in the payment of the principal and interest on the Land Bank note and mortgage, allowed the taxes to become delinquent, kept the appellee receiver in ignorance thereof, and waited until after the institution of foreclosure proceedings before making any claim against the receiver, and that appellant was thereby barred by laches from asserting any claim against the bank or its receiver. A third affirmative defense set forth a proceeding in the District Court of the United States for the Eastern District of Washington, and pleaded the judgment in that cause as res adjudicata. At the oral argument counsel for appellees admitted the insufficiency of this defense, so we shall not go into its details. Finally, and by way of "counterclaim and cross complaint," appellees set up the renewal note executed by appellant, acknowledged certain payments thereon, and prayed judgment for the balance of the principal and interest due on the note. Counsel for appellant did not challenge the legal sufficiency either of the affirmative defenses or of the counterclaim, nor did they file any pleading in response thereto. With the

pleadings in this condition, the parties waived a jury and tried the case to the court, who entered a "decree" dismissing appellant's complaint, awarding appellees judgment for the amount due on the renewal note, and ordering appellee receiver to execute a deed of conveyance for the property to appellant upon the payment by him of the amount found due on the note. Appellant brings the record of this decree here for review.

It is not clear from the record whether the parties treated the proceeding as an action at law or a suit in equity. Since, however, appellant sought the cancellation of his promissory note and prayed for general equitable relief, the appellees attacked the complaint by motion to dismiss as distinguished from a demurrer, pleaded equitable estoppel and laches as affirmative defenses, and the court entered a decree ordering a conveyance of land under certain conditions, we think the prevailing characteristics of the record warrant us in treating the proceeding as a suit in equity notwithstanding the fact that the parties solemnly waived a jury trial. At the trial appellant testified in support of the allegations of his complaint and proved the payments made by him, as set forth in the complaint. The amount of these payments is not disputed. Appellees then called as a witness E. E. Flood, who testified to the verbal agreement but denied that any written contract was contemplated by the parties. The resolution passed by the board of directors of the bank referred to by appellees in their first affirmative defense was offered in evidence. It reads as follows: "A resolution was presented authorizing the officers of the bank to issue a deed to R. J. Hooper to the real estate formerly owned by Walter Hooper, upon the payment by R. J. Hooper of his note for $10,000."

During the testimony of the witness Flood, the appellant objected to any evidence in support of the verbal agreement, but insisted that the witness be confined to a denial of the payments as testified to by appellant, upon the ground that the oral agreement was within the statute of frauds. Thus for the first time the question of the statute of frauds was specifically brought into the record. When the resolution of the bank was offered in evidence, counsel for appellant objected to its admission upon the ground that it was not a sufficient writing to remove the transaction from the bar of the statute of frauds. The appellees then called the vice president and former cashier of the bank, who testified to the amount due on the promissory note of ap-

pellant which was given in renewal of the original note executed at the time of the verbal agreement. If the action was treated in the court below as one at law, the Idaho statute provides that the affirmative matter set up in the answer and also the counterclaim would be deemed controverted by the opposite party without the filing of any reply by the appellant. Section 6717, Idaho Compiled Statutes. And this rule would be followed by the Federal District Court sitting in that state. Simpkins'. Federal Practice (Rev. Ed.) page 38, and cases there cited. On the other hand, if the action was treated as one in equity, and as we have said this appears to be the case, the affirmative matter pleaded in the answer as a defense would be deemed to be denied by the appellant, but, as to the counterclaim set up by appellees on the promissory note, appellant would be called upon to file a reply within ten days or within a longer period if allowed by the court, and, in default of such reply, a decree pro confesso on the counterclaim might have been taken. Equity rule 31. Appellees, however, did not raise the question of the failure of appellant to reply to the counterclaim, but instead proceeded to put in evidence in support thereof precisely as though appellant had in fact filed a reply. There was no suggestion in the court below that the allegations of the counterclaim stood admitted by the failure of appellant to reply thereto. Nor was any motion made for a decree pro confesso on the counterclaim. The authorities are abundant that by so proceeding the appellees waived the failure on the part of the appellant to file a reply. 49 Corpus Juris, pages 845 and 846. If appellees had moved in the lower court for a decree pro confesso on their counterclaim, and thereby had called attention to the failure of appellant to controvert its allegations, the court undoubtedly, in the furtherance of justice, would have permitted appellant to deny the allegations of the counterclaim, for it was apparent on the face of the pleadings that, instead of confessing liability on the promissory note constituting the basis of the counterclaim the appellant in his complaint was praying for the cancellation of that very instrument. In this state of the record, therefore, it was competent for appellant to raise the question of the statute of frauds by objecting to the introduction of evidence by appellees tending to prove the specific terms and conditions of the verbal agreement of July, 1925, and, in the same manner, to interpose the bar of the statute to the counterclaim. May v. Sloan, 101 U. S. 231, 25 L. Ed. 797; Dunphy v. Ryan, supra; 6 Ency-

clopedia of United States Supreme Court Reports, page 471; 27 Corpus Juris, page 373.

■ The only witness in behalf of the appellees who testified concerning the transaction between appellant and the bank was the witness Flood, and he admitted that the agreement was oral, and further testified that no written contract was ever in the contemplation of the parties. In the examination of the appellant and Flood, there was drawn into the record a fringe of fact and circumstance having to do more or less directly with the surroundings and conditions existing at the time the oral contract was made, and also the claimed delinquencies on the part of the parties respectively in failing to carry out their several undertakings and obligations. It appears that the Court took the case under advisement and later made findings of fact and conclusions of law, and pursuant thereto entered a decree of the character hereinbefore pointed out. Among other things the court found that, at the time the verbal contract was entered into between appellant and the bank, and at the time of the execution and delivery of the promissory note by appellant, he was in possession of the lands and premises as an owner of a one-half undivided interest in the lands and under a lease given to him on November 23, 1923, by his brother, Walter Hooper, the then owner of the remaining undivided one-half interest therein, which lease was for a term of three years, and that appellant continued in possession of the lands and premises after this lease had expired and until the foreclosure of the mortgage by the Federal Land Bank; that appellant defaulted in the payment of the principal and interest on the note and mortgage to the Federal Land Bank, permitting taxes to become delinquent, suffered and permitted the Land Bank to foreclose its note and mortgage and to sell the property at foreclosure sale, and "thus permitted defendants to lose such interest as they had in said lands and premises"; that this result was wholly due to the default and neglect of appellant and was not due to any default or neglect on the part of the appellees; and that, by reason of this conduct on the part of appellant, he was estopped to claim any of the relief prayed for by him. An examination of the record discloses that, at the time of making the verbal agreement in July, 1925, appellant held a lease for three years on the one-half undivided interest in the lands which subsequently passed to the bank. This lease was duly recorded in the proper place for recordation and had not then expired. It

will be seen, therefore, that appellant did not go into possession of the property pursuant to the verbal agreement. He was already in possession of the property in virtue of his own interest therein and under a valid unexpired lease for the remaining interest. While the court found that appellant remained in possession of the premises after the expiration of this lease and up to the time of the institution of the foreclosure proceedings by the Federal Land Bank, there is nothing in the record upon which to base any such finding. The appellees offered no testimony on this point at all, and the appellant testified that upon the expiration of the three-year lease he entered into a lease with a third party for his one-half undivided interest in the lands and explained to his lessee that he would have to make his own arrangements for the one-half undivided interest owned by the bank. This testimony stands unchallenged. We should be slow to disturb the finding of the trial court if there appeared to be a substantial conflict in the testimony, but we cannot allow ourselves to be bound by a finding which is in direct conflict with all the evidence in the record touching the fact found.

■ We shall not labor the proposition at great length that under the conditions disclosed by the record the appellant was not estopped from seeking a recovery of the payments made by him pursuant to a void verbal agreement for the sale of real estate. The appellees knew of the existence of the mortgage to the Federal Land Bank and had every means of being informed concerning whether or not payments were being made upon it in compliance with its obligations. They also had access to the public records to ascertain whether the taxes upon the property were in default. Appellant did not go into possession of the property in pursuance of the agreement, nor did he remain in possession after the expiration of the three-year lease. It seems quite unwarranted to say that in such circumstances there was such conduct on the part of appellant injuriously affecting the appellees as to preclude him from relief to which otherwise he would be entitled. And the same observations are equally pertinent to the defense of laches which after all is but a form of estoppel.

■■ The opinion of the District Judge who tried this case is not in the record, but, from excerpts claimed to be taken from it set forth in the appellant's brief and unchallenged by opposing counsel, it would appear that the court upheld the transaction as binding on

appellant upon the theory that the resolution of the bank adopted on August 11, 1925, was sufficient, with the aid of extrinsic evidence, to remove the transaction from the operation of the statute of frauds. To this view we are unable to subscribe. The lands were located in the state of Washington, and the contract of the parties was made and to be performed in that state. In such circumstances the statute of frauds of the state of Washington as construed by the Supreme Court of that state is the one by which the rights of the parties to this controversy must be determined. 25 R. C. L. page 698. It is settled by the decisions of the Supreme Court of Washington construing the Statute of Frauds of that state that oral contracts for the sale of real estate and contracts not to be performed within one year from the making thereof are void. Churchill v. Stephenson, 14 Wash. 620, 45 P. 28; Graves v. Graves, 48 Wash. 664, 94 P. 481; Thill v. Johnston, 60 Wash. 393, 111 P. 225; Hendry v. Bird, 135 Wash. 174, 237 P. 317, 240 P. 565; Tonkoff v. Roche Fruit & Produce Co., 137 Wash. 148, 242 P. 3; Tracy v. Barton, 139 Wash. 440, 247 P. 734.

Under the decisions of the Supreme Court of Washington, it is too plain for discussion that the resolution is wholly insufficient. It does not purport to set out any of the terms or provisions of the oral agreement, and it does not even recite the state or county in which the lands are located. It amounts to nothing more than a ratification by the bank of the authority of Flood to represent it in the negotiations here involved and empowered its officers to execute a deed to appellant upon the payment of his promissory note. Such a document contains none of the essentials of an adequate memorandum to remove a transaction from the bar of the statute of frauds. Cushing v. Monarch Timber Co., 75 Wash. 678, 135 P. 660, Ann. Cas. 1914C, 1239; Beckman v. Brickley, 144 Wash. 558, 258 P. 488; Marshall v. Hillman Inv. Co., 151 Wash. 529, 276 P. 564; Broadway Hospital & Sanitarium v. Decker, 47 Wash. 586, 92 P. 445.

Upon the whole controversy and in the light of what we have already said in this unavoidably lengthy opinion, we conclude that the rights of the parties are to be determined by the following considerations: The oral agreement of July, 1925, for the sale of an interest in lands, was void under the applicable statute of frauds, and nothing was added to the situation by the resolution of August 11, 1925; that the appellant pursuant to this verbal agreement paid out the amounts of money hereinbefore stated; that the appellee bank received and enjoyed this money; that in effect appellant's complaint was a disavowal of the transaction and an effort to recover moneys which it would be unconscionable and inequitable for the appellee bank and its receiver to retain; that the counterclaim upon the renewal note was open to the same claim of the statute of frauds that the appellant relied on for recovery in his behalf; that the question of the statute of frauds was properly raised by objection to oral testimony seeking to establish against him a liability on the note; that there was neither estoppel nor laches precluding a recovery by appellant; and that in consequence he is entitled to a recovery of the money had and received by the bank upon the implied contract to return it.

It appears from the record that, when the renewal note was executed by appellant, he borrowed of the appellee bank $1,000 which he received in cash and the renewal note was executed in the amount of $11,000 instead of $10,000, the amount of the original note. Counsel for appellant acknowledged at the time of the oral argument that this $1,000 with interest from the date of the note should be deducted from the amount due appellant as for payments made pursuant to the original oral agreement.

The decree appealed from will be reversed, and the cause will be remanded to the District Court, with directions to set aside the decree heretofore entered and in lieu thereof to enter a decree in favor of appellant for the amount of the payments hereinbefore set forth, less $1,000, with interest thereon from the date of the renewal note at the rate of interest stated in that note, and that the promissory note of appellant now in the hands of the appellee receiver be delivered up by him for cancellation, without prejudice to the right, if any, of the appellee to recover for the use and occupation of the premises or the rents, issues, and profits thereof, if any.

Reversed.