## REILLY v. WHEATLEY.

### No. 2818.

Circuit Court of Appeals, First Circuit.

Dec. 15, 1933.

James A. Reilly, of Brockton, Mass., for appellant.

I. Manuel Rubin, of Brockton, Mass. (Walter J. MacDonald, of Brockton, Mass., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and McLELLAN, District Judge.

**WILSON, Circuit Judge.**

This is an appeal from a decree of the judge of the District Court of Massachusetts ordering the appellant to convey to the appellee as trustee in bankruptcy certain real estate which she had acquired in exchange of property conveyed to her by a bankrupt.

The petition of the trustee was referred to a referee, who, without objection by the parties, though it required a plenary suit, heard the petition and found that the property belonged to the bankrupt, and ordered the appellant to convey the property to the trustee. Upon a petition to review, the referee certified a summary of the testimony and his findings to the District Court, which affirmed the order of the referee.

In addition to the certificate of the referee, an "Amended Statement" of the facts assented to by both parties and approved by the District Judge is made a part of the record.

From this and the referee's certificate it appears that the appellant had been the bookkeeper of the bankrupt, John L. Emery, for nineteen years. What the business of Emery was does not appear from the record, except that he apparently dealt in real estate, or, at least, was the owner of several parcels.

On November 21, 1930, he was the owner of a parcel of real estate situated on Guild road in the city of Brockton. He had previously tried to dispose of it without success, and was greatly in need of money to pay taxes on that and other real estate. He was indebted to the Security Cooperative Bank of Brockton on mortgage notes to the amount of $8,000, which was the limit of his borrowing capacity with that institution.

The appellant knew that he had been trying to sell the property and was in need of money to pay taxes on other property, and knew that he could not obtain more money from the Security Cooperative Bank. The amended statement of facts states that he made several propositions to the appellant to buy the property, but she refused. Finally he proposed to sell it to her for the largest sum she could obtain on the property by mortgage, and to assist her he would indorse her note. This proposition she accepted, and obtained of the Security Cooperative Bank a loan of $3,500. Emery indorsed the mortgage note. She paid him the $3,500 thus obtained. The deed to her was an ordinary quitclaim, which, under the Massachusetts statutes, chapter 183, § 11, G. L. (Ter. Ed.) conveyed a title in fee to the use of the grantee with covenant of warranty against all incumbrances made by him. By

the terms of the statute it was as though expressly conveyed to her use.

There was nothing in the deed indicating it was other than what it purported to be, viz., a conveyance in fee. According to the agreed statement, there was no mention between them that it was conveyed to her in trust for the benefit of the grantor; nor does it appear, nor is it claimed, that he owed her any money for the security of which he conveyed the property, so that it can be held to be a mortgage; nor does the record show that any promise, oral or written, was made to reconvey the land to the bankrupt.

The repairs and some improvements during the time she held the property were paid for by the bankrupt, who collected the rents, and, if not sufficient, were paid out of the funds of the bankrupt. This was explained by the appellant on the ground that he was in debt to her for commissions for insurance on his properties, she being a licensed broker, though she kept no record of the amount of the commissions due her, nor were they entered on the books of the bankrupt; nor did this obligation in any way enter into the consideration for the transfer of the property to her.

On November 25, 1931, the appellant effected an exchange of the property for a parcel of real estate on Montello street in Brockton, on which there was a mortgage of $1,-150. What her obligations may prove to be under these two mortgages is not clear from the record.

On August 31, 1932, Emery was adjudged a bankrupt. There is no claim that the conveyances to her by Emery were made with any intent to defraud his creditors, or to give a preference under the bankruptcy statute. The only evidence in the case, indicating that it was not an absolute conveyance, is the fact that he continued to collect the rents and paid the taxes, repairs, and improvements. We infer that by reason of the bankrupt's handling of the property after the transfer to her, the referee made the finding that the title to the property remained in the bankrupt, and that when she exchanged it for the property on Montello street, she stood in the same relation to the bankrupt "as a 'straw,'" as the trustee termed her in his petition.

Since there is no claim of fraud or preference, the trustee in bankruptcy stands in the same position as the bankrupt. As it does not appear in the record that the bankrupt was indebted to the appellant, and no claim being made that the transaction constituted a mortgage, the issue is, whether the appellant can be held to hold the property in trust for the benefit of the bankrupt. If so, he could not have compelled a transfer to him without relieving her of the obligations she has assumed as such trustee with his consent and for his benefit.

Trusts are divided in two main classes—express and implied. Implied trusts are again divided into resulting or constructive trusts. There are also other implied trusts which equity recognizes as arising from construction of written agreements and wills sometimes referred to as precatory trusts; Perry on Trusts (7th Ed.) c. IV, but which are not involved here.

While a trust in personal property may be accomplished by parol evidence, it is not so as to real estate. To establish an express trust in real estate under the Massachusetts statute, G. L. (Ter. Ed.) c. 203, § 1, it must be by a written instrument signed by the party creating it. It is not contended in this case that the deed to the appellant, or any other written instrument, establishes such a relation. If a trust exists, it must have resulted by implication of law.

It is equally clear that no resulting trust arose from the conveyance. Resulting trusts only arise where there is a conveyance without consideration, and from the surrounding facts and circumstances it is apparent that the grantor was still to retain his beneficial ownership, Pomeroy's Eq. Jur. (4th Ed.) §§ 1031–1033, 1035; Perry on Trusts (7th Ed.) c. V; or where there is a payment of the consideration by one party for property, but the title is taken in the name of the third, Pomeroy's Eq. Jur. (4th Ed.) § 1037; Lufkin v. Jakeman, 188 Mass. 528, 74 N. E. 933.

It cannot be maintained here that a resulting trust arose. The conveyance is by the bankrupt, not by a third party, by deed under seal, and to the use of the grantee. She gave full consideration by turning over to the grantor the entire proceeds of the mortgage note in accordance with the terms of the sale, as set forth in the agreed statement.

Constructive trusts arise from fraud, actual or constructive, where there is no intention of the parties to create such relation. Pomeroy, Eq. Jur. (4th Ed.) § 1044. They also arise when the legal title to property is obtained in violation of some duty, express or implied, owed to the one equitably entitled, and when the property thus obtain-

ed is held in hostility to his right of beneficial ownership. Rolikatis v. Lovett, 213 Mass. 545, 548, 100 N. E. 748. Constructive trusts, as they arise, contrary to the trustee's intention, are sometimes termed "trust in invitum." Where the title to property is obtained by actual fraud, or an agent purchases property in his own name when acting for his principal, are common instances of constructive trusts. Perry on Trusts (7th Ed.) c. VI.

█ If an express trust was intended between these parties, it was not created by any written instrument. A valid consideration is shown for the conveyance from the bankrupt; it was conveyed to her use; no fiduciary relation is shown to have existed here between the appellant and the bankrupt; no fraud, actual or constructive, was practiced upon him, and none is claimed to have existed, or that the transfer was made with intent to defraud creditors.

It was a voluntary transfer of the fee to obtain money which the bankrupt had been otherwise unable to obtain. The fact that the bankrupt continued to manage the property, collect the rents, and pay the taxes, repairs, and improvements, cannot overcome the appellant's testimony that he was indebted to her; or, even if her testimony on this point was rejected by the referee, overcome a deed given voluntarily without any fraudulent intent on his part or hers, and for a valuable consideration.

We find no ground in the record, in view of the agreed statement as to the facts, which was made a part of the record, upon which a trust recognized in equity can be held to have been created in favor of the bankrupt. Both the legal and equitable title to the property passed from his hand to the grantee by his deed; nor is there any claim by the trustee in bankruptcy that the conveyance to the appellant was given to secure a debt owing from the bankrupt to the appellant, so that the rule permitting oral testimony to show that an absolute deed was intended as a mortgage applies. The word "mortgage" is not found either in the petition, the referee's findings, his certificate to the District Court, or in the amended statement of facts;

nor do counsel contend the transaction was a mortgage. The referee merely finds that the title remained in the bankrupt and the property for which it was exchanged is also the property of the bankrupt, a conclusion inconsistent with the deed and the amended statement of facts. The record does not disclose any contractual obligation on the part of the appellant to reconvey either the property originally conveyed to her, or the property which she received in exchange.

Under no conception of the relations between the appellant and bankrupt could the order of the referee and the District Court that she convey to the trustee a good and sufficient conveyance of the property be warranted. The trustee in bankruptcy does not even ask that. He acknowledges that, if conveyed, it should be conveyed subject to the mortgage and taxes.

The bankrupt could not have compelled the appellant to reconvey the property. His trustee in bankruptcy stands in no better position in a bankruptcy court in which the principles of equity govern.

The decree of the District Court is reversed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

MORTON, Circuit Judge.

I concur in the result. It does not seem to me, however, that any question of trusts is involved; no such allegation is made in the bill, which charges only that the defendant holds the property as a "straw" for the bankrupt. This I understand to mean that she holds it as his agent, to be dealt with in accordance with his instructions. That fact could, I think, be proved by parol evidence. Campbell v. Dearborn, 109 Mass. 130, 12 Am. Rep. 671; Minchin v. Minchin, 157 Mass. 265, 32 N. E. 164. The difficulty with the plaintiff's case, as I see it, is that the findings do not show a holding of that sort, i. e., a bare holding as an agent, but one under a special contract of rather complicated character which, relating to interests in real estate and not being in writing, cannot be enforced. See Dunphy v. Ryan, 116 U. S. 491, 6 S. Ct. 486, 29 L. Ed. 703.