MINNIE C. SALISBURY and MARION W. DICKENS *v.* CREDIT SERVICE, INC., a corporation of the State of Delaware.

MARION W. DICKENS *v.* CREDIT SERVICE, INC., a corporation of the State of Delaware.

MARY A. BRYANT *v.* CREDIT SERVICE, INC., a corporation of the State of Delaware.

CATHERINE F. BRYANT *v.* CREDIT SERVICE, INC., a corporation of the State of Delaware.

(*November* 23, 1937.)

HARRINGTON and RODNEY, J. J., sitting.

*John Biggs, Jr.,* and *C. Stewart Lynch* for plaintiffs.

*Josiah Marvel, Jr.,* (of Marvel, Morford, Ward and Logan), and *George J. Langley* (of the New York Bar), for defendant.

Superior Court for New Castle County. Actions of Assumpsit, Nos. 140, 141, 142 and 143, March Term, 1934.

HARRINGTON, J., delivering the opinion of the Court:

The plaintiffs declared on the common counts in assumpsit, including money had and received. They claim that at various times in and after the month of May in the year 1931, they purchased from Credit Service, Inc., the defendant, through an agent, certain long term bonds, issued by that corporation; that when each of these sales were made, the defendant expressly agreed that it would maintain a customer market at 100 less 2% brokerage after one year from purchase; that it subsequently refused to comply with that provision of its contracts, and because of the statute of frauds they could not sue on those contracts. They further claim that having bought and paid for their bonds in misreliance on a contract, which could not be enforced, they can recover in these actions the full purchase prices paid, as there is no evidence in the record to show that any of the bonds purchased by them had any market value, whatever, when their causes of action arose.

The defendant company, on the other hand, among other things, claims:

1. That the plaintiffs bought their bonds from an agency of Credit Service Associates, Inc., a corporation of the State of Maryland, and denies that that corporation was acting as an agent for it in selling such bonds.

2. That it appeared from the evidence that the interest on the bonds of the defendant company, purchased by the

plaintiffs, had always been paid when the coupons were detached and sent in; that such bonds, therefore, had some value, and because of the equitable nature of an action on the common counts in assumpsit, it was necessary for the plaintiffs to show that value in order that it might be deducted from their claims before they could recover anything from the defendant, and that company further claims that no such value could be ascertained from the evidence before the court.

3. That the defendant corporation did not agree to repurchase the plaintiffs' bonds, at their option, in one year after their purchase, at 100 less 2% brokerage, as is claimed by the plaintiffs.

The actual sales and deliveries of the bonds sold were made by Dure-Bushinger Company, a brokerage house at Utica, New York, through which company Credit Service Associates had marketed them, but our conclusion is that in making such sales Credit Service Associates, Inc. was acting as the agent of Credit Service, Inc., the defendant.

The evidence justifying this finding of fact is set out with considerable detail in the statement preceding this opinion, and it would serve no useful purpose to repeat it here.

It cannot be denied that the plaintiffs sent their bonds to the defendant company for repurchase after the expiration of one year from the time when they bought them; nor is it denied that that company refused to accept and pay for them.

At a prior stage of this case, it was, also, held on demurrer to the declaration in one of these actions that the alleged contract therein relied on was not to be performed within a year, and by reason of the provisions of the statute of frauds could not be sued on. *Bryant v. Credit Service,*

*Inc.*, 6 *W. W. Harr.* (36 *Del.*) 360, 175 *A.* 923. That case was decided, however, on the allegations of the declaration before the court, and does not determine that the contract, as therein alleged, was, in fact, made.

■ Since the days of Lord Mansfield it has been frequently said, in substance, that where one person has received money under such circumstances that the Court considers it unjust for him to retain it, an action for money had and received for the recovery of such money will lie. *Williams on the Statute of Frauds*, § 4, *page* 212, etc.; *E. F. Drew & Co. v. Southern Grocery Stores*, 7 *W. W. Harr.* (37 *Del.*) 355, 183 *A.* 511; *Guthrie v. Hyatt*, 1 *Harr.* 446; see, also, *Heitz v. Sayers*, 2 *W. W. Harr.* (32 *Del.*) 207, 121 *A.* 225. This general principle, undoubtedly, applies to a great variety of cases, but the language used in stating the rule seems to be broader than its usual application. As a workable rule that general rule has, therefore, been criticized by the modern English decisions though without any attempt to lay down a more precise rule applicable to all cases. *Holt v. Markam*, [1923] 1 *K. B.* 504; *Sinclair v. Brougham*, [1914] *A. C.* 398; *Baylis v. Bishop of London*, [1913] 1 *Ch.* 127. In fact that might be difficult, if not impossible.

■ But whatever limitations there may be on the application to particular facts of the general rule so frequently laid down, it seems that the statute of frauds does not usually prevent recovery on the common counts in assumpsit in appropriate cases. *Williams on the Statute of Frauds*, § 4, *page* 212, etc.

In most cases the plaintiff can, therefore, recover on the appropriate common count in assumpsit when money has been received by the defendant from him in misreliance on a contract which cannot be enforced because of the statute of frauds. The same rule also applies where work and labor

have been done for the defendant at his request, or where, at his request, money has been paid by the plaintiff to a third person for his use and benefit. *Scott v. Pattison,* [1923] 2 *K. B.* 723; *Day v. New York Central R. Co.,* 51 *N. Y.* 583; *Richards v. Allen,* 17 *Me.* 296; *King v. Brown,* 2 *Hill* (*N. Y.*) 485; *Ham v. Goodrich,* 37 *N. H.* 185; *Dunphy v. Ryan,* 116 *U. S.* 491, 6 *S. Ct.* 486, 29 *L. Ed.* 703; *Williams on the Statute of Frauds,* § 4, *page* 212, *etc.; Woodward on Quasi Contracts,* §§ 93, 95.

So far as appears from the reported cases, no action of assumpsit for money had and received, involving the statute of frauds, has been brought in this state, but these general principles have been recognized and applied in actions of assumpsit for work and labor done. *Watson v. Watson,* 1 *Houst.* 209; *McGartland v. Steward,* 2 *Houst.* 277; see, also, *Heitz v. Sayers,* 2 *W. W. Harr.* (32 *Del.*) 207, 121 *A.* 225; *Rash v. Equitable Trust Co.,* 5 *W. W. Harr.* (35 *Del.*) 139, *note,* 159 *A.* 839. They naturally apply to actions for money had and received where there has been a total failure of consideration (*Williams on the Statute of Frauds,* § 4, *page* 212, *etc.; Strickland v. Turner,* [1852] 7 *Exch.* 208); but where the facts justify it, that action is not confined to cases of that character. *Williams on the Statute of Frauds,* § 4, *page* 212, *etc.*

In actions of assumpsit for money had and received where there is not a total failure of consideration, the reasonable value of any benefits received by the plaintiff should be deducted from his claim, but the value of such benefits is a defense and like all other defenses must be shown by the defendant, if it does not otherwise appear. *Moses v. MacFerlan,* 97 *Eng. Repr.* 676, 2 *Burr.* 1005; *Day v. New York Central R. Co.,* 51 *N. Y.* 583; *Richards v. Allen,* 17 *Me.* 296; see, also, *Longchamp v. Kinny,* 99 *Eng. Repr.* 91; *Holt v. Markam,* [1923] 1 *K. B.* 504.

But after all, as the various actions of the plaintiffs are of a quasi contractual nature, the precise terms of the contract made when they bought their bonds, and the meaning of the language used in these contracts, are the important questions for us to determine.

It is true that the bonds, on which the various actions of the plaintiffs are based, were not brought at the same time, but the terms of the contracts relied on are the same in every particular.

The evidence justifies the conclusion that a customer market is a guaranteed repurchase market for the benefit of original purchasers, and if the defendant agreed to maintain that market, the plaintiffs are in that class. Their claims against the defendant company are wholly based on the language of one paragraph of the printed prospectus issued by it describing the bonds sold, and not in any respect on any additional or supplementary statements or promises made by the sales agent at the time such sales were made.

The evidence shows that when they purchased their bonds that prospectus was read to them in its entirety, though, as they claim, with particular emphasis on the customer market clause. By reason of that fact, they, also, claim that the language of the prospectus was, in fact, the offer on which their various purchase contracts were based, and so became a part of those contracts; that by reason of the customer market clause in the prospectus they were induced to purchase their bonds, and under that clause the defendant, at their option definitely agreed to repurchase such bonds after one year from their original purchase.

The prospectus relied on purported to describe the bonds to be issued, and stated their alleged advantages as an investment in somewhat the usual manner. It, also, contained the following statements:

1. "We offer the 6% Gold Debenture Bonds of Credit Service, Inc. in denominations of 100, 500, 1000 and 5,000, with corresponding certificates of profit sharing, and recommend them as a sound seasoned investment, yielding above the average.

2. "Price—par or face value."

3. The authorized issue is $5,000,000; the bonds maturing in 1948, and dated February 1st, 1923.

4. "Offerings (of bonds) will be made each month to finance loan demands by the public."

5. "A customer market is maintained by Credit Service, Inc. at 100 less 2% brokerage after one year from purchase."

It is elementary law that in order to constitute a contract there must be an offer made by one person to another and an acceptance of that offer by the person to whom it was made. 7 *Hals. Laws of Eng.* 345; *Reed v. Philadelphia, W. & B. R. R. Co.*, 3 *Houst.* 176. And an offer, or a proposal, as it is sometimes called, means the signification by one person to another of his willingness to enter into a contract with him on the terms specified in the offer. 7 *Hals. Laws of Eng.* 345. Whether in writing or otherwise, a mere statement of a person's willingness to enter into negotiations with another person is in no sense an offer, and cannot be accepted so as to form a binding contract. 7 *Hals. Laws of Eng.* 346; 23 *R. C. L.* 1281.

The language used may not ordinarily permit of that construction, but a business circular, a corporate prospectus, a published price list, or other advertisement of like nature may be in such form as to amount to an offer which, when accepted, will form a binding contract. *Carlill v. Carbol Smoke Ball Co.*, [1893] *L. R.* 1 *Q. B.* 256; *Jacob v. Batavia, etc., Trust Co.*, [1924] 1 *Ch.* 287; 7 *Hals. Laws*

*of Eng.* 346, *note;* 1 *Willist. on Contracts, Rev. Ed.,* § 21; *Elliott on Contracts* 30; 13 *C. J.* 289.·

That construction is usually applied to published offers of rewards for the doing of certain requested acts, or the furnishing of certain desired information. See *Carlill v. Carbol Smoke Ball Co.,* [1893] *L. R.* 1 *Q. B.* 256; *Lovett v. Frederick Loeser & Co.,* 124 *Misc.* 81, 207 *N. Y. S.* 753; 7 *Hals. Laws of Eng.* 347.

But where the paper relied on as an offer is in the form of a general advertisement in a newspaper, or a circular, couched in general language and proper to be sent to all persons interested in a particular trade or business, or a prospectus of a general and descriptive nature, the construction that it was merely intended for an invitation to make an offer has perhaps been applied in most of the reported cases considering the question. *Lovett v. Frederick Loeser & Co.,* 124 *Misc.* 81, 207 *N. Y. S.* 753; 1 *Willist. on Contracts, Rev. Ed.,* § 27; 23 *R. C. L.* 1281; see, also, *Moulton v. Kershaw,* 59 *Wis.* 316, 18 *N. W.* 172, 48 *Am. Rep.* 516. Whether that is true necessarily depends on the language used (see *Charles E. Quincy & Co., etc., Corporation v. Cities Service Co.,* 156 *Misc.* 83, 282 *N. Y. S.* 294; *Page on Contracts,* § 86), but that conclusion has been frequently reached where goods were advertised for sale at what might seem to be a listed price. *Grainger & Son v. Gough,* [1896] *App. Cas.* 325; *Lovett v. Frederick Loeser & Co.,* 124 *Misc.* 81, 207 *N. Y. S.* 753; *Poposia Coal Co. v. Nye-Schneider-Fowler Co.,* 106 *Neb.* 4, 182 *N. W.* 586; 1 *Willist. on Contracts, Rev. Ed.,* § 27; 23 *R. C. L.* 1281.

As was said by Mr. Williston in his *Work on Contracts,* in discussing this question (*Vol.* 1, § 27, *page* 28, *Rev. Ed.*), "The only general test which can be submitted as a guide is an inquiry whether the facts show that some performance was promised in positive terms in return for something requested."

Stating the same proposition in somewhat different language, "If the offer made by means of advertisements, circulars and the like shows an intent to assume legal liability thereby, such an offer may on acceptance form a contract." *Page on Contracts*, § 86.

For example, in *Moulton v. Kershaw*, 59 *Wis.* 316, 18 *N. W.* 172, 48 *Am. Rep.* 516, the defendant wrote to the plaintiff: "We are authorized to offer Michigan fine salt, in full carload lots of 80 to 95 bbls., delivered at your city, at 85¢ per bbl., to be shipped per C. & N. W. R. R. Co. only. At this price it is a bargain, as the price in general remains unchanged." On receipt of this letter, the plaintiff wired "You may ship me two thousand (2,000) bbls. Michigan fine salt, as offered in your letter."

The court, in holding that no contract was made, said: "The language is *not such as a business man would* use in making an offer to sell an individual a definite amount of property. The word 'sell' is not used. They say 'we are authorized to *offer* Michigan fine salt,' etc., and volunteer an opinion that at the term stated it is a bargain. They do not say, we offer to sell to you. They use general language proper to be addressed generally to those who were interested in the salt trade. It is clearly in the nature of an advertisement or business circular, to attract the attention of those interested in that business to the fact that good bargains in salt could be had by applying to them, and not as an offer by which they were to be bound, if accepted, for any amount the persons to whom it was addressed might see fit to order." See, also, *Grainger & Son v. Gough*, [1896] *App. Cas.* 325; *Poposia Coal Co. v. Nye-Schneider-Fowler Co.*, 106 *Neb.* 4, 182 *N. W.* 586.

In determining the real purpose of the prospectus issued by the defendant company, when considered as such, it is true that it must be read as a whole, and that one

paragraph can not usually be singled out and relied on. When so read, in addition to its general descriptive and advertising nature, it may be that, though the authorized bond issue stated in it was $5,000,000, the fact that the amount to be sold when the prospectus was issued was not definitely stated, is significant as to its intent.

As the defendant company points out, it merely stated "offerings will be made each month to finance loan demands by the public," but bonds were sold and delivered by the defendant company to the plaintiffs, so whether the prospectus, when read as a whole ,was intended as an offer on the acceptance of which contracts to sell a particular number of bonds could be based, is not the precise question before us.

It cannot be denied that the prospectus was issued by the defendant company to its selling agents to aid them in the sale of the bonds referred to in it. The language of the customer market clause, if in any sense promissory in its nature, was, therefore, a part of the contract of sale.

A customer market was being maintained when the plaintiffs purchased their bonds, and that market was continued for some time thereafter. The defendant company, therefore, claims that, when reading from the prospectus, the statements made to the plaintiffs at the time the sales were made that "a customer market is maintained," etc., were merely representations of existing facts that were correct in every particular at that time, and that such statements were in no sense of a contractual or promissory nature. Those statements not only were that "a customer market is maintained by Credit Service, Inc.," but the words "after one year from purchase" were, also, included in them.

Considering the sentence as a whole, it would, therefore, seem that the words "is maintained" were used in the sense of "will be maintained," and were of a promissory and future nature. As those statements were acted on

by the plaintiffs by the purchase of bonds, the defendant was bound by them. If this is not the meaning of the words "is maintained," as used in the representations made by the soliciting agents who made the sales to the plaintiffs, it would seem that no effect, whatever, could be given to the words "after one year from purchase," used in the same sentence.

We know of no other provision in the prospectus that would seem to affect the correctness of this conclusion.

It is true that under this construction, as to the meaning of the language used in the contracts of sale, the defendant company agreed to repurchase the bonds sold "after one year from purchase," and that no specific date for the performance of that obligation was agreed on. But, applying the usual rule that where no time for the performance of a contract is fixed by it, the law will assume that a reasonable time is intended (*Willist. on Contracts, Rev. Ed.*, § 38; *Restat. Law of Contracts*, § 32), the time for performance of the defendant's obligation to repurchase the bonds sold must be assumed to be a reasonable time after the expiration of one year from the date they were purchased. Each of the plaintiffs requested the defendant to perform its contract and to repurchase the bonds sold, but it refused to comply with these requests.

As we have already indicated, such a contract can not be sued on and enforced because of the statute of frauds. *Rev. Code* 1935, § 3106. *Bryant v. Credit Service, Inc.*, 6 *W. W. Harr.* (36 *Del.*) 360, 175 *A.* 923, *supra.* By reason of that fact, the plaintiffs in these actions can recover from the defendant company the amounts paid by them for their bonds, with interest from the dates on which payment was demanded and refused.

Perhaps we should also add that plaintiffs' attorneys contend that a new trial is never granted when the case is tried before a court without a jury.

That procedure is for the purpose of permitting a trial court to correct manifestly prejudicial error in its proceedings without compelling the injured party to resort to an appellate court by writ of error, and we see no reason why it should not be resorted to where the original trial was before the court without a jury.

The defendant's motions for new trials must be refused.