**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

|  |  |  |
|---|---|---|
| PIVOTAL PAYMENTS DIRECT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: N15C-02-059 EMD CCLD |
| v. | ) | |
| | ) | TRIAL BY JURY OF TWELVE |
| PLANET PAYMENT, INC., | ) | DEMANDED |
| | ) | |
| Defendant. | ) | |

Submitted: September 9, 2015
Decided: December 29, 2015

*Upon Consideration of Defendant's Motion to Dismiss*
***DENIED***

P. Clarkson Collins, Jr., Esquire, Meghan A. Adams, Esquire, Morris James LLP, Wilmington, Delaware and Richard L. Crisona, Esquire, Vera Zolotaryova, Esquire, Allegaert Berger & Vogel LLP, New York, New York, *Attorneys for Plaintiff Pivotal Payments Direct Corp.*

James S. Green, Sr., Esquire, Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware and Derek W. Edwards, Esquire, Todd R. Hambidge, Esquire, Waller Lansden Dortch & Davis, LLP, Nashville, Tennessee, *Attorneys for Defendant Planet Payment, Inc.*

**DAVIS, J.**

**INTRODUCTION**

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. This action involves the breach of contract and fraudulent inducement claims brought by Plaintiff Pivotal Payments Direct Corp. ("Pivotal") against Defendant Planet Payment, Inc. ("Planet"). Pivotal is a credit card payment processing company. Pivotal performs its credit card payment processing in Canada. Planet provides credit card processing services to companies like Pivotal. Pivotal and Planet entered into the Multi-Currency Processing Agreement ("MCPA") on or around April 7, 2010. After the parties signed the MCPA, Pivotal

purports to have had certain problems with Planet's services. Pivotal alleges that Planet made various misrepresentations during negotiations over the MCPA and, also, in the MCPA itself.

Pivotal filed its Amended Complaint (the "Amended Complaint") on April 14, 2015 alleging that Planet breached the MCPA and fraudulently induced Planet to enter into the MCPA. On May 5, 2015, Planet filed Defendant's Motion to Dismiss (the "Motion") moving to dismiss a number of claims in the Amended Complaint. The Motion seeks dismissal of the claims of fraudulent inducement, as set forth in Counts 1-24, and certain claims of breach of contract, as set forth in Counts 26-27. Planet claims that the fraudulent inducement claims are untimely and that, even if they are timely, the MCPA and New York law do not permit the claims to be brought. On June 8, 2015, Pivotal filed Plaintiff's Answering Brief In Opposition To Defendant's Motion To Dismiss (the "Opposition"). In the Opposition, Pivotal argues that its claims are not time-barred and that the Amended Complaint asserts properly plead claims for fraudulent inducement and breach of contract. On June 22, 2015, Planet filed Defendant's Reply Brief In Further Support Of Its Motion To Dismiss The Amended Complaint (the "Reply"). On September 9, 2015, the Court held a hearing on the Motion, the Opposition and the Reply. At the conclusion of the hearing, the Court took the matter under advisement.

This is the Court's decision on the Motion. For the reasons set forth below, the Court will **DENY** the Motion to Dismiss.

**RELEVANT FACTS**[1]

Pivotal is a Canadian corporation that provides credit card payment processing and other services to merchants in Canada.[2] Planet is a Delaware corporation with its principal place of

---

[1] Unless otherwise indicated, the following are the Relevant Facts of this action as the facts were alleged in the Amended Complaint. When considering a motion under Civil Rule 12(b)(6), the Court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011).
[2] Amended Complaint ¶ 6.

business in New York.[3] Planet provides credit card payment processing services to other companies, like Pivotal.[4]

In September 2009, Pivotal's predecessor, Tangarine Payment Solutions, Corp. (referred to here also as "Pivotal"), and Planet began to negotiate an agreement for Planet to provide payment processing and international multi-currency services to Pivotal.[5] Pivotal alleges that Planet made false material representations about its available services and its capabilities.[6] Planet made many of the alleged misrepresentations during negotiations in its Global Multi-Currency Processing Capabilities report on August 23, 2009.[7]

On or around April 7, 2010, Pivotal and Planet entered into the MCPA.[8] The MCPA is a multi-part agreement with several separate schedules and exhibits incorporated by reference. In the MCPA, the parties agreed to the exclusive jurisdiction of federal and state courts in the State of Delaware.[9]

Pivotal alleges that during negotiations Planet held out that it was able to provide specific services and products, including three-tier billing, dynamic currency conversion, accounting and reporting services, effective risk monitoring, reliable point-of-sale terminal hardware, and debit transaction services.[10] Pivotal alleges that Planet could not deliver the promised services and products.[11] It is unclear in the Amended Complaint when exactly Pivotal discovered the misrepresentations.

---

[3] *Id.* ¶ 7.
[4] *Id.*
[5] *Id.* ¶¶ 2, 9-10
[6] *Id.* ¶ 2.
[7] *Id.* ¶¶ 12-13.
[8] Transmittal Affidavit of Meghan A. Adams, Esquire, Exhibit A, Multi-Currency Processing Agreement [hereinafter MCPA].
[9] MCPA, Schedule 3 ¶ 8(a).
[10] Amended Complaint ¶ 3.
[11] *Id.*

Pivotal communicated with Planet about the problems and purportedly gave Planet opportunities to fix the problems.[12] On April 13, 2012, Planet's Senior Vice President/Managing Director sent a letter to Pivotal's CEO saying: "it goes without saying that Planet Payment has not met the expectations that we launched our mutual relationship with several years ago."[13] The letter promised that its services would improve.[14] Pivotal claims that it "reasonably relied" on Planet's assurances that the problems would be addressed.[15] Pivotal alleges that Planet's misrepresentations and breaches of the MCPA cost Pivotal millions of dollars in damages.[16]

The original MCPA was for one year and expired on December 31, 2013.[17] Pivotal automatically renewed the MCPA twice, on January 1, 2014 and January 1, 2015.[18] Pivotal explains that it could not simply stop using Planet's services and products because Pivotal had already developed software to interact with Planet's software.[19] Pivotal also explains that it would have needed to amend all of its contracts with its merchants and change merchants' hardware and software if Pivotal stopped working with Planet.[20]

Pivotal ultimately filed its Amended Complaint on April 14, 2015. Pivotal alleges that Planet fraudulently induced Pivotal to enter into the MCPA through its material misrepresentations and that Planet breached the MCPA. Planet filed the Motion on May 6, 2015.

### LEGAL STANDARD

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of

---

[12] *Id.* ¶¶ 4, 16-19, 30, 34,49, 58, 65, 78, 92, 102, 110, 119, 131, 137, 160.
[13] *Id.* ¶¶ 4, 156-59.
[14] *Id.*
[15] *Id.* ¶¶ 4, 16-19, 30, 34,49, 58, 65, 78, 92, 102, 110, 119, 131, 137, 160.
[16] *Id.* ¶ 4.
[17] Defendant's Motion to Dismiss at 34.
[18] *Id.*
[19] Amended Complaint ¶ 144.
[20] *Id.*

4

the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[21] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[22]

The Court has reviewed the Amended Complaint. The Amended Complaint is 112 pages long and contains 499 numbered paragraphs of facts and conclusions. The Court initially finds that Pivotal has alleged enough well-pleaded facts to support the claims asserted in the Amended Complaint. In order for Planet to succeed on the Motion, therefore, the Court must find some other basis to hold that Pivotal would not be entitled to recover under any reasonably conceivable set of circumstances.

## DISCUSSION

### A.   Whether the Claims Are Timely

The first issue is whether Pivotal's claims are barred by the statute of limitations. The Court must determine what jurisdiction's statute of limitations applies under Delaware law.[23]

The parties disagree about whether the Court should apply Delaware, New York, or Quebec law for the statute of limitations. Under Delaware law, there is a three-year statute of limitations for all counts.[24] Under New York law, there is a six-year statute of limitations.[25] Under the Civil Code of Quebec, there is a three-year prescriptive period.[26]

---

[21] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[22] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[23] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 2012 WL 3201139, at *16 (Del. Ch. Aug. 7, 2012); RESTATEMENT (SECOND) CONFLICT OF LAWS § 142 (AM. LAW. INST. 1971).
[24] 10 Del. C. § 8106.
[25] N.Y. C.P.L.R. § 213.
[26] "An action to enforce a personal right or movable real right is prescribed by three years, if the prescriptive period is not otherwise determined." C.C.Q. § 2925, *available at* http://ccq.lexum.com/ccq/en#!fragment/sec2925.

5

The MCPA contains a provision that provides that the MCPA "shall be construed in accordance with the laws of the State of New York without regard to the conflicts of law provisions thereof."[27] Under Delaware law, choice-of-law provisions in contracts do not apply to statutes of limitations, unless a provision expressly includes it.[28] If no provision expressly includes it, then the law of the forum applies because the statute of limitations is a procedural matter.[29] Here, the parties selected New York law in the MCPA, but they did not expressly include the statute of limitations in the choice of law provision. Therefore, the MCPA's choice of law provision is not dispositive on the issue of which statute of limitations applies.

Even if another state's substantive law may govern the parties' rights in a given case, the "general rule is that the forum state's statute of limitations applies."[30] This is consistent with the general principle that the procedural law of the forum state (here, Delaware) usually applies. One exception to this rule arises when "the procedural law of the foreign state is 'so inseparably interwoven with substantive rights as to render a modification of the foregoing rule necessary, lest a party be thereby deprived of his legal rights.'"[31] The Court finds that the parties have not demonstrated that the laws of New York or Canada are so inseparably interwoven with the substantive rights as to cause a deviation from the general rule. The Court will apply the statute of limitations of the forum.[32]

---

[27] MCPA, Schedule 3 ¶ 8(a).
[28] *Am. Energy Tech., Inc. v. Colley & McCoy Co.*, 1999 WL 301648, at *2-3 (D. Del. Apr. 15, 1999); *Juran v. Bron,* 2000 WL 1521478, at *11 (Del. Ch. Oct. 6, 2000) (following *Am. Energy Tech.*).
[29] *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001) ("As a general rule, the law of the forum governs procedural matters."); *Am. Energy Tech.*, 1999 WL 301648, at *2 ("Statutes of limitations are generally considered to be procedural rather than substantive law.").
[30] *Furnari v. Wallpang, Inc.,* 2014 WL 1678419, at *4 (Del. Super. Apr. 16, 2014); *see also MPEG LA, L.L.C. v. Dell Global B.V.*, 2013 WL 812489, at *3 (Del. Ch. Mar. 6, 2013).
[31] *MPEG LA,* 2013 WL 812489, at *3 (quoting *Monsanto Co. v. Aetna CASs. & Sur.* Co., 1994 WL 317557, at *4 (Del. Super. Apr. 15, 1994)).
[32] The parties discuss Delaware's Borrowing Statute at length in their briefs. 10 DEL. C. § 8121. The Court finds that the Borrowing Statute is inapplicable in this case.

6

Delaware's statute of limitations is three years from the date when the action accrued.[33] Counts 1-24 of Pivotal's Amended Complaint are for fraudulent inducement. A claim for fraudulent inducement accrues when the fraudulent statements were made, which must be on or before the date when the parties entered into the contract.[34] Pivotal and Planet entered into the MCPA on April 7, 2010, therefore, that is the latest date the fraudulent inducement claim could have accrued.

Counts 25-27 of Pivotal's Amended Complaint are for breach of contract. The statute of limitations period starts to run at the time of the breach.[35] According to the Amended Complaint, Count 25 did not accrue until May 2, 2014.[36] In the MCPA, Planet agreed to provide Pivotal with PCI-compliant terminals by May 1, 2014. Pivotal contends that Planet breached the MCPA by failing to provide the equipment by the deadline.

The Court finds that there are questions of fact as to when Counts 26 and 27 accrued. In the MCPA, Planet agreed to provide Pivotal with debit card processing and with certified terminal hardware but failed to provide either service.[37] Unlike the provision at issue in Count 25, there were no deadlines for the debit card processing and the certified terminal hardware. It is unclear in the pleadings on what exact date Counts 26 and 27 accrued.

Planet argues that Counts 26 and 27 accrued when the parties signed the MCPA.[38] In a case in which the plaintiff claims that the defendant breached the contract by making representations in the contract that the defendant could not meet, then that claim accrues when

---

[33] 10 DEL. C. § 8106.
[34] *Van Lake v. Orin CRM USA, Inc.*, 2013 WL 1087583, at *7 (Del. Super. Feb. 15, 2013); *Puig v. Seminole Night Club*, LLC, 2011 WL 3275948, at *4 (Del. Ch. Apr. 12, 2011) (holding that the plaintiff's fraudulent inducement claims must have accrued before the signing of the contract because the allegedly fraudulent statements must have been made before the parties signed the contract).
[35] *VLIW Tech. v. Hewlett-Packard Co.*, 2005 WL 1089027, at *13 (Del. Ch. May 4, 2005).
[36] Amended Complaint ¶ 484.
[37] *Id.* ¶¶ 486-499.
[38] Defendant's Motion to Dismiss at 18.

the parties signed the contract.[39]  This rule does not apply in this case because Pivotal is arguing that Planet breached the contract by failing to provide the promised services, not that Planet breached the contract by making false representations when they made the contract.[40]

On the other hand, Pivotal argues that Planet repeatedly breached the MCPA from the signing of the MCPA to present because Planet failed to provide its services in that time.  Under Delaware law, when a contract does not have a deadline or other time specified, the parties have a "reasonable" amount of time to perform the contract.[41]  It is a question of fact as to what time period is reasonable.[42]  Here, Planet had a reasonable amount of time to provide the debit card processing and certified terminal hardware.  The Court cannot decide what is "reasonable" under this contract on a motion to dismiss.

In sum, Counts 1-24 accrued on April 7, 2010; Count 25 accrued on May 2, 2014.  When Counts 26 and 27 accrued is a question of fact.  Pivotal filed this action on February 6, 2015.  Therefore, Counts 1-24 are past the three-year statute of limitations.   Whether Counts 26 and 27 are time-barred still needs to be determined through discovery and litigation.

The next question is whether the Court should toll the statute of limitations for Counts 1-24.[43]  The Court may toll the statute of limitations in certain circumstances, including fraudulent concealment, inherently unknowable injury, and equitable tolling.[44]  In other words, the Court

---

[39] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (quoting *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011)) ("Because representations and warranties about facts pre-existing, or contemporaneous with, a contract's closing are to be true and accurate when made, a breach occurs on the date of the contract's closing and hence the cause of action accrues on that date.").

[40] Amended Complaint ¶¶ 486-99.

[41] *Salisbury v. Credit Service*, 199 A. 674, 683 (Del. Super. 1937).

[42] *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *11 (Del. Ch. May 2, 2007).

[43] Pivotal also argues that Planet is estopped law from raising a limitations defense under New York law. Defendant's Reply Brief in Further Support of Its Motion to Dismiss the Amended Complaint at 5.  Under Delaware law, the Court accepts a statute of limitations with all of its "accoutrements." *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *4 (Del. Super. Sept. 20, 2010).  Because the Delaware statute of limitations applies, Pivotal cannot use New York law to argue that the statute of limitations defense was estopped.

[44] *Smith v. Mattie*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010).

may toll the statute of limitations "when the facts underlying a claim were so hidden that they could not have been discovered by a reasonable plaintiff."[45] If a tolling exception applies, then the statute starts to run when the plaintiff discovers the "facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of the injury]."[46]

As alleged, Pivotal had problems with Planet's services after the MCPA was signed.[47] Pivotal decided to communicate with Planet and try to find a solution before turning to legal action.[48] Planet promised to fix the problems.[49] It is unclear when Pivotal discovered the issues, which underlie this case, with Planet's services. While the Amended Complaint could have plead more facts, the Court cannot -- drawing all reasonable inferences in favor of the non-moving party -- hold that Pivotal would not be entitled to recover under any reasonably conceivable set of circumstances at this early stage in the proceedings. Therefore, dismissal on timeliness grounds is premature; however, the Court may be able to resolve this issue prior to trial on a more developed record.

**B.      Whether the MCPA Disclaimer Provision Bars Counts 1-24**

Pivotal alleges that Planet made misrepresentations to fraudulently induce Pivotal to enter into the MCPA in Counts 1-24. The Court must apply New York law under the choice of law provision of the MCPA.[50] Under New York law, a fraudulent inducement claim requires the

---

[45] *Id.*

[46] *Id.* (quoting *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2007)).

[47] Amended Complaint ¶ 3.

[48] *Id.* ¶ 11.

[49] *Id.*

[50] MCPA, Schedule 3 ¶ 8(a). Delaware courts will honor a choice of law provision, even if a party is challenging the contract for fraudulent inducement, as long as the chosen state has a substantial relationship with the parties or transaction and the law does not go against Delaware public policy. *See Arby Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1046-48 (Del. Ch. 2006). "To hold that their choice is only effective as to the determination of the contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid." *Id.* at 1049.

plaintiff to state that there was "a knowing misrepresentation of material present fact, which [was] intended to deceive [plaintiff] and induce [plaintiff] to act on it, resulting in injury."[51] Some of the alleged misrepresentations in the Amended Complaint are from the MCPA and some are representations that Planet allegedly made before the MCPA was signed. The MCPA contains a merger clause, so Planet argues that the MCPA bars any fraudulent inducement claims based on parol evidence.[52] The Court disagrees.

A straight-forward reading of the merger clause would mean that Pivotal could not use any representations made by Planet outside of the MCPA to support its claims. The merger clause in ¶ 12.7 of the MCPA states:

> This Agreement constitutes the entire agreement between the parties hereto relating to the subject matter hereof and all prior negotiations, agreements and understandings, whether oral or written, are superseded hereby. No modification or amendment to this Agreement shall be effective unless and until set forth in writing and signed by both parties hereto.[53]

Under New York law, a general merger clause will not exclude parol evidence to show fraudulent inducement.[54] To exclude parol evidence in a fraudulent inducement claim, a merger clause must specifically disclaim previous representations.[55] From a plain reading of the MCPA's merger clause, the Court finds that the clause is itself general and does not contain specific disclaimers.

Planet argues, however, that there are specific disclaimers in other provisions of the MCPA. First, there is a provision on warranties and representations in Schedule 3 ¶ 9(i):

> The express warranties and representations set forth in this agreement are in lieu of, and each party expressly disclaims, any and all other warranties, conditions or

---

[51] *Gosmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (N.Y. App. Div. 2010).
[52] Defendant's Motion to Dismiss, at 19.
[53] MCPA ¶ 12.7.
[54] *Mikada Grp., LLC v. T.G. Nickel & Assocs., LLC*, 2014 WL 7323420, at *10 (S.D.N.Y. Dec. 19, 2014); *Danann Realty Corp. v. Harris*, 5 N.E.2d 597 (N.Y. 1959).
[55] *Mikada*, 2014 WL 7323420, at *10; *Danann*, 5 N.E.2d 597.

representations (express or implied, oral or written), with respect to Planet's Programs, the Tangarine Program, software or equipment or any part thereof, including any and all implied warranties or conditions of title, non-infringement, merchantability, or fitness or suitability for any purpose (whether or not a party knows, has reason to know, has been advised or is otherwise in fact aware of any such purpose), whether alleged to arise by law, by reason of custom or usage in the trade, or by course of dealing.[56]

The Court finds that this provision does not disclaim Planet's representations. Schedule 3 ¶ 9(i) states that the representations in the MCPA take the place of any representations that "arise by law, by reason of custom or usage in the trade, or by course of dealing." The representations that Planet made during due diligence did not arise under law, by trade custom, or during the course of dealing. Therefore, Schedule 3 ¶ 9(i) does not specifically disclaim the misrepresentations at issue in this action.

There is a second provision on warranties in ¶ 7.2 of the MCPA:

THE WARRANTIES SET FORTH IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.[57]

This provision does not disclaim the representations, only warranties. The MCPA uses the terms "representations" and "warranties" as distinct words, as seen in Schedule 3 ¶ 9(i). In addition, this warranties provision specifically addresses warranties related to the sale of goods: merchantability and fitness for a particular purpose. Moreover, ¶ 7 of the MCPA makes distinctions between "mutual representations and covenants" and "warranties."[58] Therefore, this provision also does not appear to disclaim the representations at issue in this action.

---

[56] MCPA, Schedule 3 ¶ 9(i).
[57] MCPA ¶ 7.2.
[58] *Compare* ¶ 7.1 *with* ¶ 7.2 of the MCPA.

11

For these reasons, the Court finds that MCPA's merger clause is general because it does not contain any specific disclaimers. Therefore, the MCPA does not bar Pivotal's fraudulent inducement claims based on parol evidence.

## C. Whether Counts 1-24 Are Veiled Breach of Contract Claims

Planet argues that the fraudulent inducement claims in Counts 1-24 should actually be breach of contract claims because Planet merely "overstated" its services during contract negotiations. For purposes of Civil Rule 12(b)(6), the Court disagrees. As Planet contends, this civil action may evolve into a more straightforward action for breach of contract; however, the Court is presently testing the sufficiency of the Amended Complaint under Civil Rule 12(b)(6) and will apply the appropriate legal standard for this stage in the proceedings.

Planet turns to three cases in which courts found that "overstatements" of a company's ability were not fraudulent inducement. In *Lomaglio Associates Inc. v. LBK Marketing Corp.*, a company sued a factory for breach of contract and fraud because the factory represented that it could produce 3,000 figurines per week and then cancelled the company's order.[59] The court granted the factory's motion to dismiss the fraud claims because the plaintiff did not allege sufficient facts to show that the factory intended to fraudulently induce the plaintiff's reliance.[60]

Planet argues that *Lomaglio* is analogous to the case at hand because both Planet and the factory overstated their abilities to provide service. The problem with this analysis is that it overlooks the fact that in *Lomaglio* the court held that the allegations did not indicate that the factory had the intent to commit fraud. *Lomaglio* did not hold that an overstatement of capabilities was a breach of contract and not fraud; it held that the particular facts in *Lomaglio* did not support a fraud claim. Both Planet and the factory in *Lomaglio* might have overstated

---

[59] 892 F. Supp. 89, 91-92 (S.D.N.Y. 1995).
[60] *Id.* at 95.

their capacities, but the question in this case is whether any of Planet's representations were fraudulent, not if they were overstatements. This is a question of fact that cannot be decided on a motion to dismiss.

Planet also refers to *Champion Titanium Horseshoe, Inc. v. Wyman-Gordon Investment Castings, Inc.*[61] In that case, a factory agreed to produce horseshoes for a horseshoe manufacturer, but the factory allegedly failed to fulfill the contract.[62] The horseshoe manufacturer sued for breach of contract and later moved to amend its complaint to include fraud claims.[63] The court did not allow the manufacturer to include fraudulent inducement because the only fact to support the claim was that the factory failed to perform under the contract.[64] The court notes that if this were enough to establish fraud, then "every complaint for breach of contract would *ipso facto* state a claim for fraud."[65]

Pivotal's action is not a case in which the failure to perform is the only fact supporting the claim of fraud. For example, Pivotal alleges that Planet "oversold its capabilities and under-delivered its service to Pivotal."[66] Pivotal also alleges that Planet made representations about the services that it could perform to entice Pivotal to enter into a large contract that established a long-term relationship between the parties. Whether Pivotal can survive the elements of fraudulent inducement at trial or on a motion for summary judgment remains to be seen. However a motion to dismiss is premature because the Amended Complaint pleads sufficient facts.

---

[61] 925 F. Supp. 188 (S.D.N.Y. 1996).
[62] *Id.* at 189.
[63] *Id.*
[64] *Id.* at 190.
[65] *Id.*
[66] Amended Complaint ¶ 4.

The third case Planet relies on is *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*[67] In that case, a water bottle distributor and a supplier entered into a contract that contained a provision requiring the distributor to buy one million bottles of water per year.[68] The distributor alleged that this provision was a fraudulent representation that the factory could provide the number of water bottles the distributor needed.[69] The court, in that case, held that the statement was not a false representation because the provision was about future capacity, not present capacity.[70] Therefore, the distributor could not allege that the representation was false when it was made.[71] Like *Lomaglio* and *Champion Titanium*, *Ho Myung* is not analogous to the case at hand. Further, none of the cases cited state that a representation overstating capabilities is not fraudulent inducement.

An overstatement may be a breach of contract or fraudulent inducement. The question at this stage in the proceedings, drawing all reasonable inferences in favor of Pivotal, is whether Pivotal has alleged facts that meet the elements of the claim and could be entitled to recover under any reasonably conceivable set of circumstances. As this Court stated above, Pivotal's fraudulent inducement claims might not survive a motion for summary judgment or jury trial, but Pivotal plead sufficient facts to survive a motion to dismiss under Civil Rule 12(b)(6).

**D.      Whether the Express Terms of the MCPA Bar Counts 1, 4, 6-14, and 22-23**

Planet next argues that the provisions in the MCPA at issue in Counts 1, 4, 6-14, and 22-23 contradict Planet's representations about its abilities that it made earlier. Under New York

---

[67] 665 F. Supp. 2d 239 (S.D.N.Y. 2009).
[68] *Id.* at 253-54.
[69] *Id.*
[70] *Id.* at 254.
[71] *Id.*

14

law, if an express term of a contract directly contradicts an alleged misrepresentation, then it is not reasonable for the plaintiff to rely on the earlier representation.[72]

### 1. Count 1

In this count, Pivotal alleges that Planet represented it had reliable systems.[73] Planet argues that Schedule 3 ¶ 7(a) of the MCPA contradicts this representation:

> <u>Standard of Services</u>. Each party shall use commercially reasonable efforts to provide services required to be provided on its part hereunder in accordance with prevailing industry standards, the Rules, and in accordance with their respective system specifications and documentation from time to time, as well as the Service Level Standards between the parties, set forth in Schedule 6 of the Agreement. The Parties acknowledge and agree that the remedies set forth in Schedule 6 of the Agreement of any breaches thereof, shall be their exclusive remedies for such breaches.[74]

The Court disagrees with Planet. As Pivotal argues, Planet allegedly misrepresented its systems' reliability in "documentation," so the representation did not contradict the MCPA. Further, Count 1 is about Planet's general representations about its systems' reliability. Planet argues that the MCPA contradicts any earlier representations, and therefore is saying the MCPA promised to provide systems that may or may not be reliable. That interpretation seems highly unlikely.

### 2. Count 4

On Count 4, Pivotal alleges Planet represented that it could provide an effective dynamic currency conversion system.[75] One of the problems Pivotal had was that Planet did not design the dynamic currency conversion system so that consumers could pick the service at the end of their transactions, as Planet allegedly represented.[76] Planet argues that MCPA ¶ 2.1(a) contradicts that representation. MCPA ¶ 2.1(a) states that consumers would pick the service for

---

[72] *Clanton v. Vagianelis*, 187 A.D.2d 45, 47-48 (N.Y.A.D. 1993).
[73] *Id.* ¶¶ 164, 167, 169-70.
[74] MCPA, Schedule 3 ¶ 7(a).
[75] Amended Complaint ¶¶ 204-05.
[76] *Id.* ¶¶ 56-57, 213.

their transactions at the point of sale as soon as Planet's processing system recognized that the credit card was eligible for dynamic currency conversion.[77] Planet is correct that ¶ 2.1(a) contradicts the representation, but that contradiction is not relevant at this point in the proceeding. In reality, a credit card transaction began with the credit card processing system giving a consumer the option to use the dynamic currency conversion system.[78] This process is inconsistent with Planet's representations made pre-MCPA as well as during negotiations. Thus, any contradiction between ¶ 2.1(a) and earlier representations is irrelevant. The question is whether the actual situation contradicted ¶ 2.1(a).

### 3. Counts 6-14

These counts are Pivotal's claims that Planet represented that it had risk monitoring services during negotiations.[79] Planet argues that there was no fraudulent inducement because Schedule 4 of the MCPA states that "Pivotal will handle their own risk management process."[80] Pivotal responds that Pivotal's claims are based on Planet being responsible for risk *monitoring*, not risk *management*. Simply put, Pivotal alleges that Planet's systems were supposed to alert Pivotal of any problems that Pivotal would need to address. However, Schedule 4 also states in a bulleted list:

- Pivotal will manage all merchant and Agent bank risk and will do all the underwriting and approval for any accounts boarded on Planet.
- Pivotal will ensure they only submit approved accounts.
- Planet will ensure they only accept setups by those people on Pivotal's approved list.

---

[77] MCPA ¶ 2.1(a).
[78] Amended Complaint ¶¶ 56-57.
[79] *Id.*
[80] MCPA, Schedule 4; Transmittal Affidavit of Meghan A. Adams, Esquire, Exhibit B, PMO Scope & Requirements Project: Pivotal Payments, at 4.

16

- Pivotal will use their own risk monitoring system that will be populated in part by the all items file feed provided by Planet (see reporting section above).[81]

There is a reporting section in the Operations Functional Requirements section of Schedule 4.[82] The reporting section states that Pivotal will receive online access to standard reports and that Pivotal can receive a standard file fee from Planet and online access to standard "Agent Bank" level reporting.[83] Pivotal's merchants may obtain monthly activity reports and may access transactions.[84] The question for the Court now, is whether the statements about risk monitoring in Schedule 4, in light of the reporting section, contradicted Planet's earlier representations. The Court needs more facts to decide this question. Therefore, a motion to dismiss is premature.

### 4. Count 22

In this count, Pivotal alleges that Planet misrepresented that Planet had certified the external PIN pad for use with Planet's processing services in Canada and that the PIN pad supported terminals by other PIN pad providers, including Hypercom, Ingenico, and Verifone.[85] Planet argues that this representation contradicts Schedule 2 of the MCPA, which lists the three types of terminals that Planet would supply: Hypersom T42XX series terminals already certified for Canada to Planet, iPay Gateway API & Virtual Terminals, and Ingenico models as developed and certified by Ingenico.[86] The Court disagrees with Planet. Any contradiction is irrelevant here because Pivotal is alleging that Planet did not certify an external PIN pad for use with Planet's processing services in Canada, which would mean that Planet's description of the

---

[81] Transmittal Affidavit of Meghan A. Adams, Esquire, Exhibit B, PMO Scope & Requirements Project: Pivotal Payments, at 12.
[82] *Id.* at 8-9.
[83] *Id.*
[84] *Id.*
[85] Amended Complaint ¶ 445.
[86] MCPA, Schedule 2.

Hypersom T42XX series terminals as already being "certified for Canada to Planet" is a misrepresentation.[87]

### 5. Count 23

In this count, Pivotal alleges that Planet misrepresented that the MICROS system, another software system, was integrated to Planet in Canada.[88]  MCPA ¶ 3.3(e) states that Planet "may provide support or integrated transaction processing from certain payment systems providers certified by Planet (including, for example MICROS)."[89]  Planet argues that this contradicts earlier representations because it means that Planet *might*, not *would*, provide this service.  The Court finds that any contradiction is irrelevant because Pivotal is alleging that Planet fraudulently misrepresented that Planet *could* provide MICROS, not that Planet failed to provide MICROS.

### E.    Whether the Expiration of the Original MCPA Term Barred Counts 1-24

Planet argues that the Court should limit the fraudulent inducement claims to the period before Pivotal renewed the MCPA.[90]  Under New York law, a party waives its claim of misrepresentation when it voluntarily renews a contract with the knowledge of fraud.[91]

The Court disagrees with Planet.  The original MCPA expired on December 31, 2013. Pivotal automatically renewed the MCPA twice, on January 1, 2014 and January 1, 2015.  As discussed in Section A of this opinion, it is unclear when Pivotal discovered the alleged fraudulent misrepresentations.  The Court must know when Pivotal discovered the alleged misrepresentations before it can limit the fraudulent inducement claims to the period before Pivotal renewed the MPCA.

---

[87] Amended Complaint ¶ 112.
[88] *Id.* at ¶ 456.
[89] MCPA § 3.3(e).
[90] Defendant's Motion to Dismiss at 33-34.
[91] *Deutsch v. Health Ins. Plan of Greater N.Y.*, 573 F. Supp. 1433, 1441 (S.D.N.Y. 1983).

## CONCLUSION

For the foregoing reasons, Planet's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

_____
Eric M. Davis, Judge