# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PIVOTAL PAYMENTS DIRECT CORP.,  )
 )
Plaintiff/Counterclaim-  )
Defendant,  )
 )   C.A. No. N15C-02-059 EMD CCLD
v.  )
 )
PLANET PAYMENT, INC.,  )
 )
Defendant/Counterclaim-Plaintiff,  )

Submitted: September 23, 2020
Decided: November 30, 2020

*Upon Consideration of Defendant's Motion for Partial Summary Judgment*
***GRANTED** in part and **DENIED** in part*

P. Clarkson Collins, Jr, Esquire, Patricia A. Winston, Esquire, Morris James, Wilmington, Delaware, Richard L. Crisona, Esquire, Alexander E. Ehrlich, Esquire, Allegaert Berger & Vogel, New York, New York. *Attorneys for the Defendant/Counterclaim-Plaintiff*.

James S. Green, Sr., Esquire, Seitz, Van Ogtrop & Green, Wilmington, Delaware, Derek W. Edwards, Esquire, Todd R. Hambridge, Esquire, Waller Lansden Dortch & Davis, Nashville, Tennessee. *Attorneys for the Plaintiff/Counterclaim-Defendant*.

**DAVIS, J.**

## I.     INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. This action involves the breach of contract and fraudulent inducement claims brought by Plaintiff Pivotal Payments Direct Corp. ("Pivotal") against Defendant Planet Payment, Inc. ("Planet"). Pivotal alleges that Planet fraudulently induced Pivotal into entering the Multi-Currency Processing Agreement ("MCPA") and, then, subsequently breached the MCPA

by failing to perform. Pivotal claims that Planet knew at all times that it could not provide the services required under the MCPA.

Pivotal filed its Complaint against Planet on February 6, 2015.[1] Planet filed a motion to dismiss on March 17, 2015.[2] Pivotal filed an Amended Complaint on April 14, 2015.[3] Planet filed a motion to dismiss the Amended Complaint on May 5, 2015.[4] The Court denied the motion to dismiss on December 29, 2015.[5] Planet filed an answer and counterclaim against Plaintiff/Counterclaim Defendant Pivotal on February 3, 2016.[6] Pivotal answered Planet's counterclaim on February 23, 2016.[7]

Planet moved (the "Motion") for partial summary judgment on Counts 1-24 and Counts 26-27 on March 6, 2020.[8] Pivotal opposed the Motion. The Court held a hearing on the Motion on September 23, 2020.[9] At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court **GRANTS** the Motion as to Counts 1-24 and **DENIES** the Motion as to Counts 26-27.

## II.    BACKGROUND

Pivotal is a Canadian company offering credit and debit card payment processing services to merchants throughout Canada.[10] Planet is a Delaware corporation with its principal place of

---

[1] D.I. No. 1
[2] D.I. No. 14
[3] D.I. No. 20.
[4] D.I. No 23.
[5] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *10 (Del. Super. Dec. 29, 2015).
[6] D.I. No. 49.
[7] D.I. No. 51.
[8] D.I. No. 134.
[9] D.I. No. 194.
[10] Decl. of Philip Fayer in Supp. of Pl.'s Answer. Br. (hereinafter "Fayer Decl.") ¶ 3.

business located in Long Beach, New York.[11]  Planet provides international payment processing and multi-currency processing services to merchant service providers, such as Pivotal.[12]

## A. THE PARTIES NEGOTIATE AND ENTER INTO THE MCPA.

In September 2009, Tangarine Payment Solutions, Corp., Pivotal's predecessor, and Planet entered into negotiations regarding credit card processing services.[13]  Planet provided a "Global Multi-Currency Processing Capabilities" document to Pivotal on or about August 23, 2009.[14]  Pivotal alleges that Planet made material misrepresentations about Planet's available services and capabilities in this document.[15]

On or around April 7, 2010, Pivotal and Planet entered the MCPA.[16]  The MCPA is a multi-part agreement with several separate schedules and exhibits incorporated by reference. The MCPA contains a choice of law provision:

> (a) Governing Law. This Agreement shall be construed in accordance with the laws of the State of New York, without regards to the conflict of laws provisions thereof. Each party hereby submits to the exclusive jurisdiction of and consents to suit in the courts, Federal and State, located in the State of Delaware.[17]

Under Schedule 3 ¶ 8(a) of the MCPA, the parties agreed that New York law governed the agreement and that Delaware courts would have exclusive jurisdiction.  Planet's executives involved with business development and marketing worked out of Planet's Long Beach, New York office.[18]

---

[11] Answer to Amend. Compl. and Countercl. (hereinafter "Answer") ¶ 7.
[12] Id.
[13] Id. ¶ 9.
[14] Id. ¶ 12.
[15] Amend. Compl. ¶ 12.
[16] Ex. A to Transmittal Affidavit of Meghan A. Adams, Esquire, Multi-Currency Processing Agreement (hereafter "MCPA").
[17] MCPA Schedule 3 ¶ 8(a).
[18] See e.g. Decl. of Patricia A. Winston, Esq. in Supp. of Def.-Countercl. Pl. Planet Payment Inc's Op. Br. in Supp. of its Mot. for Partial Summ. J. (hereinafter "Def.") Def.'s Ex. 62 39:6-18 (Planet's headquarters "where marketing was handled . . . where general counsel existed" was located in Long Beach, New York); Def.'s Ex. 63 30:8-14

Pivotal alleges that during negotiations Planet held out that it was able to provide specific services and products, including three-tier billing, dynamic currency conversion, accounting and reporting services, effective risk monitoring, reliable point-of-sale terminal hardware, and debit transaction services.[19] Pivotal alleges that Planet could not deliver the promised services and products.[20] Pivotal's CEO, Philip Fayer, testified that by June 2010, Pivotal concluded that they "were lied to, misrepresented, recklessly and selfishly induced into entering an agreement where [Planet] couldn't fulfil on their end of the bargain."[21]

Pivotal learned between October 2010 and August 2012 that "Planet's capabilities were not as represented" with respect to various aspects of its promised services.[22] Pivotal claims that it "reasonably relied" on Planet's assurances that problems with the services would be fixed.[23] Planet denies the allegations or admits only that there were occasional service interruptions.[24]

Despite Pivotal's issues with Planet's services, the relationship proved to be profitable.[25] Pivotal engaged The Strawhecker Group ("TSG") to calculate damage incurred by deficiencies with Planet's services.[26] TSG produced a report (the "TSG Report") summarizing net profit loss caused by Planet's deficient services.[27]

---

(Planet's executives that supervised business development operated from Long Island, New York); Def.'s Ex. 68 45:4-7 (Planet's general counsel Graham Arad "who . . . would have been involved, swapping e-mails and things, as the contract was being worked on" operated out of Long Beach, New York).

[19] Amend. Compl. ¶ 3.
[20] *Id.*
[21] Def. Ex. 4 268:22-24.
[22] Def. Ex. 8, 4-8 (Interrogatory Responses).
[23] Amend. Compl. ¶¶ 4, 16-19, 30, 34, 49, 58, 65, 78, 92, 102, 110, 119, 131, 137, 160.
[24] Answer. ¶¶ 4, 16-19, 30, 34, 49, 58, 65, 78, 92, 102, 110, 119, 131, 137, 160.
[25] *See* Def. Ex. 9 79-80 (Interrogatory Resp. 15 detailing profits Pivotal recorded onboarding merchants with Planet's services).
[26] Def. Ex. 51 3.
[27] *See e.g.* Def. Ex. 51 6, 8, 32.

## B. PROCEDURAL BACKGROUND

Pivotal commenced this action on February 6, 2015. Planet filed a motion to dismiss on March 17, 2015. On April 14, 2015, Pivotal filed its Amended Complaint seeking recovery for (i) fraudulent inducement (Counts 1-24) and (ii) breach of the MCPA (Counts 25-27).

On May 5, 2015, Planet filed a motion to dismiss Counts 1-24 and Counts 26 and 27 of Pivotal's Amended Complaint. The Court ruled on several issues and denied Pivotal's motion to dismiss.[28] First, the Court ruled Delaware's three-year statute of limitations for all counts applied.[29] Second, the Court found that there were questions of fact as to when Counts 26 and 27 accrued.[30] Finally, the Court held that New York substantive law applied to Pivotal's fraudulent inducement claim.[31]

Planet filed the Motion on March 6, 2020. The Court held a hearing on the Motion on September 23, 2020. The Motion seeks summary judgment on Counts 1-24 (the "Fraudulent Inducement Claims") and Counts 26 and 27 (The "Breach of Contract Claims") of Pivotal's Amended Complaint.

## III.    PARTIES' CONTENTIONS

### A. PLANET'S CONTENTIONS.

Planet moves for summary judgment on the Fraudulent Inducement Claims and the Breach of Contract Claims. Planet contends that Pivotal's claims are barred by the statute of limitations. Planet argues that any tolling theory could have applied only until Pivotal had actual or inquiry notice of their claims regardless of any alleged post-notice conduct by Planet. In

---

[28] *See Pivotal Payments Direct Corp.*, 2015 WL 11120934, at *3-*5, *10 (Del. Super. Dec. 29, 2015).
[29] *Id.* at *3.
[30] *Id.* at *4.
[31] *Id.* at *5.

5

addition, Planet claims that even if the Fraudulent Inducement Claims were timely, Pivotal has not suffered any damages. Planet relies on New York law that holds that only actual losses are recoverable as damages. Planet contends that the factual record shows that Pivotal earned a profit from its relationship with Planet under the MCPA. Pivotal, therefore, argues that Pivotal is not entitled to any damages as it did not suffer any losses.

### B. PIVOTAL'S CONTENTIONS

Pivotal opposes the Motion. Pivotal states that its claims are timely under two tolling theories: fraudulent concealment and equitable tolling. Pivotal also claims that Planet is barred from asserting the statute of limitations under the doctrines of quasi-estoppel and equitable estoppel. Pivotal contends that Planet's post-contracting "assurances" that it could provide agreed-upon services prevented Pivotal from investigating its fraudulent inducement claims. According to Pivotal, Planet's assurances tolled the statute of limitations as to the fraudulent inducement claims. Additionally, Pivotal argues that its contract claims are timely because the claims are based on multiple breaches within three years the filing the action.

Pivotal maintains that Delaware substantive law applies to the Fraudulent Inducement Claims. Pivotal contends that Delaware law applies to these claims because Delaware has the most significant relationship to the case. According to Pivotal, Delaware recognizes the profit Pivotal lost because of Planet's alleged fraudulent inducement as damages. Therefore, Planet argues that it may recover on the Fraudulent Inducement Claims.

### IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to

determine whether genuine issues of material fact exist, "but not to decide such issues."[32]

Summary judgment will be granted if, after viewing the record in a light most favorable to a

nonmoving party, no genuine issues of material fact exist and the moving party is entitled to

judgment as a matter of law.[33]  If, however, the record reveals that material facts are in dispute,

or if the factual record has not been developed thoroughly enough to allow the Court to apply the

law to the factual record, then summary judgment will not be granted.[34]

The moving party bears the initial burden of demonstrating that the undisputed facts

support his claims or defenses.[35]  If the motion is properly supported, then the burden shifts to

the non-moving party to demonstrate that there are material issues of fact for the resolution by

the ultimate fact-finder.[36]

## V. DISCUSSION

### A. THE COURT WILL GRANT SUMMARY JUDGMENT ON THE FRAUDULENT INDUCEMENT CLAIMS

#### 1. *No theory bars Planet from asserting the Statute of Limitations.*

Pivotal argues that the theories of quasi-estoppel and equitable estoppel bar Planet from

asserting the statute of limitations.  The Court finds, that on this record, the theories of quasi-

estoppel and equitable estoppel do not bar Planet from asserting applicable statutes of

limitations.

---

[32] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon& Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[33] *Id.*
[34] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[35] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[36] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

### a. Quasi-estoppel

Quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken."[37] "Quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."[38] "A party does not need to show reliance for quasi-estoppel to apply."[39] The party to be estopped needs only to "[gain] some advantage for himself or [produce] some disadvantage to another."[40]

The Court finds that quasi-estoppel does not apply because Planet did not take inconsistent positions. Pivotal claims that Planet first qualified any issues as "Minor Problems that Planet was fixing."[41] Pivotal then contends this is inconsistent with Planet's present position that those issues were "clear evidence that Planet lacked the capability to provide the Services."[42] Planet, however, argues that Pivotal had actual or inquiry notice of its claims by 2010.[43] It is not inconsistent to assert that Pivotal had notice of its claims but that Planet was capable of fixing the underlying problems upon which the claims were based. Therefore, Planet did not take an inconsistent position and quasi-estoppel does not bar Planet from asserting the statute of limitations.

### b. Equitable Estoppel

The Court also finds that equitable estoppel does not bar Planet from asserting the statute of limitations. Unlike quasi-estoppel, equitable estoppel involves a party that "by his conduct

---

[37] *In re Rural/Metro Corp. Stockholder's Litigation*, 102 A.3d 205, 247 (Del. Ch. 2014).
[38] *Id.* (citing *Pers. Decisions, Inc. v. Bus. Planning Sys.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008).
[39] *Barton v. Club Ventures Invs. LLC*, 2013 WL 6072249, at *6 (Del. Ch. Nov. 19, 2013).
[40] *Pers. Decision, Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008).
[41] Pl.'s Answer. Br. in Opp'n. to Def.'s Mot. for Partial Summ. J. 22. (Hereinafter "Answer. Br.").
[42] *Id.*
[43] Def. Planet Payment Inc.'s Opening. Br. in Supp. of its Mot. for Partial Summ. J. 25, 27 (Hereinafter "Opening Br.").

intentionally or unintentionally leads another" to change position to his detriment in reliance upon that conduct.[44] The party claiming estoppel must show that it (1) lacked knowledge or the means of obtaining knowledge of the truth of the facts in question, (2) relied on the conduct of the party against whom estoppel is claimed and (3) suffered a prejudicial change of position because of its reliance.[45] Reliance on misleading conduct tolls the statute of limitations.[46]

Pivotal seeks to estop Planet from asserting the statute of limitations because Pivotal allegedly relied upon Planet's misleading conduct to not bring its fraudulent inducement claims until the limitations period passed. The factual record does not support Pivotal's position. The record demonstrates that Pivotal believed that Planet had misrepresented its service capabilities by 2010.[47] Thus, Pivotal knew or had the means of obtaining knowledge of the basis for their fraudulent inducement claims by 2010. The theory of equitable estoppel, therefore, does not bar Planet from asserting the statute of limitations.

### c. The Fraudulent Inducement Claims are time-barred.

The Court previously held that Delaware's statute of limitations applied to Pivotal's claims.[48] Delaware's statute of limitations for these claims is three years.[49] Pivotal's fraudulent inducement claims (Counts 1-24) accrued on April 7, 2010.[50] Pivotal filed this action on February 6, 2015. Therefore, unless some theory tolls the statute of limitations, Pivotal's fraudulent inducement claims are time-barred.

---

[44] *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005).

[45] *See Bantum v. New Castle County Vo-Tech Educ. Ass'n*, 21 A.2d 44, 51 (Del. 2011).

[46] *See Redzewicz v. Neuberger*, 490 A.2d 588, 592093 (Del. Super. 1985) ("The doctrine of estoppel, as it applies to the actions of an insurer, consists of misleading conduct by or on behalf of the insurer which is relied upon by the insured to his detriment . . . . Such misleading conduct and reliance theron, when proved by the party invoking the doctrine, tolls the statute of limitations").

[47] *See e.g.*, Ex. 4 268:22-24; Def. Ex. 8, 4 ("Pivotal learned, with respect to Count 3, that Planet's capabilities were not as represented, in the last week of April 2010"); *see also* Def. Ex. 8, 5; Def. Ex. 8, 7; Def. Ex. 8, 8; Def. Ex. 8, 9;

[48] *See Pivotal Payments Direct Corp.*, 2015 WL 11120934, at *3.

[49] *See id.* at *4 (citing 10 DEL. C. § 8106).

[50] *See id.* at *5.

When the cause of action accrues outside the statute of limitations, the burden is on the plaintiff to show that a tolling doctrine adopted by Delaware courts applies.[51] On a motion for summary judgment, however, the Court must view the evidence in the light most favorable to the non-moving party and draw all rational inferences that favor the non-moving party.[52] Therefore, unless the evidence, viewed in the light most favorable to Pivotal, shows that a tolling doctrine applies, the Court should grant summary judgment.

Pivotal argues that its claims are timely under the theories of fraudulent concealment and equitable tolling.[53] Under any tolling doctrine, the statute of limitations is only tolled until the plaintiff is "objectively aware of the facts giving rise to the wrong i.e. on inquiry notice."[54] A party is on inquiry notice when they are discover facts "'constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry, which if pursued, would lead to the discover' of such facts."[55] "Inquiry notice does not require that a plaintiff be aware 'of all aspects of the alleged wrongful conduct."[56] "Rather, 'the statute of limitations begins to run when plaintiffs should have discovered the general fraudulent scheme."[57] Once the plaintiff is on inquiry notice, "no theory will toll the statute further."[58]

Pivotal was on inquiry notice of their fraudulent inducement claims by 2010. Pivotal's CEO, Philip Fayer, testified that by June 2010, Pivotal concluded that they "were lied to, misrepresented, recklessly and selfishly induced into entering an agreement where [Planet]

---

[51] *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008).
[52] *See Merrill*, 606 A.2d at 99 (Del. 1992).
[53] Answer Br. 18.
[54] *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008).
[55] *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) (citing *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982).
[56] *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 672836, at *9 (Del. Super Dec. 4, 2019).
[57] *Id.*
[58] *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

10

couldn't fulfil on their end of the bargain."[59]  Pivotal's interrogatory responses also indicate that

Pivotal was aware of the basis of its claims by 2010.[60]  For example, "Pivotal learned, with

respect to Count 1, that Planet's capabilities were not as represented, in October 2010."[61]  This

shows that Pivotal knew facts that formed the basis of its claims against Planet, or that should

have led them to discover those claims, by 2010.  Therefore, the statute of limitations began to

run in 2010 when Pivotal was on inquiry notice.

Pivotal argues that it relied upon Planet's "assurances" that Planet "could and would

provide such Services" under the MCPA.[62]  Pivotal argues that under *Washington House

Condominium Association of Unit Owners v. Daystar Sills, Inc.*,[63] such assurances constitute

fraudulent concealment.[64]  *Washington House* does not apply.  The *Washington House* defendant

provided assurances and temporary solutions for the plaintiff condominium tenants' issues with

their individual units.[65]  The tenants then brought claims related to the condominium's "common

elements."[66]  The *Washington House* court ruled that those assurances related to the individual

units could be construed as affirmative conduct intended to lead the plaintiffs off the trail of

inquiry for claims related to the condominium's common elements.[67]  In other words, the

*Washington House* defendant's conduct prevented the plaintiffs from discovering the basis for

their claim.

---

[59] Def. Ex. 4 268:22-24.
[60] *See e.g.* Def Ex. 8, 4-8.
[61] Def. Ex. 8, 4.
[62] Answer. Br. 5.
[63] 2017 WL 3412079, at *20 (Del. Super. Aug. 8, 2017).
[64] Answer. Br. 18. This allegation of fraudulent concealment also supports Pivotal's equitable tolling argument. Answer. Br. 19 ("Equitable tolling is appropriate where . . . 'the plaintiff can show it was ignorant of the wrong due to the defendant's fraud or fraudulent concealment . . .'") (citing *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv.*, 1996 WL 506906, at *16 (Del. Ch. Sep. 3, 1996).
[65] *Wash. House Condo. Ass'n.*, 2017 WL 3412079, at *20 (Del. Super. Aug. 8, 2017).
[66] *Id.*
[67] *Id.*

11

The factual record demonstrates that Pivotal discovered the basis for its fraudulent inducement claims in 2010. Planet's post-2010 assurances are irrelevant to tolling the statute of limitations, under any theory because once Pivotal discovered that basis, it had inquiry notice of its claims. No theory tolls the statute of limitations further once the plaintiff is on inquiry notice.[68] Thus, any tolling period ended when Pivotal had inquiry notice in 2010.

Pivotal brought this claim in 2015, past the limitations period.[69] Therefore, the Court grants summary judgment on the Fraudulent Inducement Claims as time-barred.

### 2. Planet is also Entitled to Summary Judgement on the Fraudulent Inducement Claims as Pivotal is not Entitled to Damages under Controlling New York law.

In the decision on the motion to dismiss, the Court applied New York law to hold that the MCPA Disclaimer Provision did not bar Pivotal's fraudulent inducement claims.[70] If "the Court has already applied a particular's [sic] states substantive law at one stage of the case, it may be required under the law of the case doctrine to apply that same state's substantive law in subsequent stages."[71] The law of the case doctrine requires that "once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will be not be disturbed by that court unless compelling reason to do so appears."[72] "[A] prior legal ruling based on a constant set of facts should be reconsidered only if it is 'clearly wrong, produces an injustice or should be revisited because of changed circumstances.'"[73]

---

[68] *See In re Tyson Foods Inc.*, 919 A.2d at 585 (Del. Ch. 2007).
[69] D.I. No. 1
[70] *See Pivotal Payments Direct Corp.*, 2015 WL 11120934, at *5-*6. The Court notes that Pivotal argued that New York substantive law applied to its fraudulent inducement claims at the motion to dismiss, despite now arguing that Delaware substantive law applies. *See* Pl.'s Answer. Br. in Opp'n to Def.'s Mot. to Dismiss 14.
[71] *Verizon Commc'ns Inc. v. Ill. Nat'l Ins. Co.*, 2018 WL 2317821, at *5 (Del. Super. May 16, 2018), *rev'd on other grounds*, 222 A.3d 566.
[72] *May v. Bigmar, Inc.*, 838 A.2d 285, 287 n.8 (Del. Ch. 2003).
[73] *Hudak v. Procek*, 806 A.2d 140, 154 (Del. 2002).

12

The Court has reviewed its earlier determination that New York law applied. The Court earlier ruling that New York law applied was not clearly wrong. Under Delaware choice of law analysis, the Court continues to find that New York substantive law applies to Planet's fraudulent inducement claims.

Delaware law is contractarian and the "parties' contractual choices are respected."[74] This preference for the parties' contractual choice is particularly strong in disputes over rights created by the agreement.[75] "Delaware courts seek to ensure freedom of contract and promote clarity in the law" to facilitate commerce.[76] "Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship."[77] Contracting parties seek to avoid uncertainty through choice of law provisions.[78] Thus, Delaware courts "are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction" in fraud cases.[79] "A material relationship exists where a party's principal place of business is located within the foreign jurisdiction, a majority of the activity underlying the action occurred within the foreign jurisdiction, and where parties to a contract performed most of their services in the foreign state."[80]

New York has a material relationship to the transaction. The dispute arises because Planet, a Delaware corporation with its principal place of business in New York, allegedly fraudulently induced Pivotal, a Canadian corporation, into entering the MCPA. Planet's alleged pre-contractual misrepresentations underlie the action. The record shows that the underlying

---

[74] *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. Jul. 11, 2011).
[75] *See Transdigm Inc. v. Alcoa Global Fasteners, Inc.*, 2013 WL 2326881, at *5 (Del. Ch. May 29, 2013) (". . . this is a dispute over 'rights created [by the Purchase Agreement]' and the parties' choice of law should govern").
[76] *Akorn, Inc. v. Fresenius Kabi AG*, 2018 WL 4719347, at *60 (Del. Ch. Oct. 1, 2018).
[77] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1048 (Del Ch. 2006).
[78] *See id.* ("To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims . . . would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid").
[79] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1046 (Del Ch. 2006).
[80] *Deuly v. DynCorp. Intern., Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (Internal citations omitted).

13

conduct happened in New York.[81] Therefore, even if the law of the case doctrine did not apply, the Court would honor the parties' choice of law provision.

Applying New York law in this case also encourages certainty in commercial transactions. The parties, operating transnationally, "sought 'a reliable body of law to govern their relationship.'"[82] "Parties operating in . . . international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship."[83] The parties thus chose New York law to govern their agreement.[84] The Court will apply New York law to avoid "uncertainty of precisely the kind that the parties' choice of law provision sought to avoid."[85]

A New York fraudulent inducement claim must prove: "1) a false representation of material fact, 2) known by the utterer to be untrue, 3) made with the intention of inducing reliance and forbearance from further inquiry, 4) that is justifiably relied upon, and 5) results in damages."[86] When measuring damages in fraud actions, New York follows the "out-of-pocket" rule.[87] Damages are "calculated to compensate plaintiffs for what they lost because of the fraud . . . not to compensate them for what they might have gained."[88] Thus, the out-of-pocket rule "excludes expected profit."[89]

---

[81] *See e.g.* Def.'s Ex. 62 39:6-18 (Planet's headquarters "where marketing was handled . . . where general counsel existed" was located in Long Beach, New York); Def.'s Ex. 63 30:8-14 (Planet's executives that supervised business development operated from Long Island, New York); Def.'s Ex. 68 45:4-7 (Planet's general counsel Graham Arad "who . . . would have been involved, swapping e-mails and things, as the contract was being worked on" operated out of Long Beach, New York).

[82] *Greetham v. Sogima L-A Manager, LLC*, 2008 WL 4767722, at *14 (Del. Ch. Nov. 3, 2008) (citing *Abry*, 891 A.2d at 1047 (Del. Ch. 2006).

[83] *Abry*, 891 A.2d at 1048 (Del. Ch. 2006).

[84] Pl.'s Ex. 24 Planet 0084625 (MCPA Schedule 3 § 8(a)).

[85] *Abry*, 891 A.2d at 1048 (Del. Ch. 2006).

[86] *MBIA Ins. Corp. v. Credit Suisse Securities (USA) LLC*, 927 N.Y.S.2d 517, 531 (N.Y. Sup. Ct. 2011).

[87] *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).

[88] *Id.*

[89] *In re Eugenia VI Venture Holdings, Ltd. Litigation*, 649 F. Supp.2d 105, 121 (S.D.N.Y. 2008).

Pivotal stated that, from April 2010 to March 2016, it profited by boarding merchants with Planet.[90] Furthermore, Pivotal's expert TSG calculated damages in this case as loss in "Net Profit."[91] Ray Sobczyk, who participated in the TSG Report, agreed that "the net profits are the bottom line figure."[92] Therefore, the record shows that Pivotal earned a profit from its relationship with Planet under the MCPA.

No facts remain in dispute regarding Pivotal's profits from its relationship with Planet. Under controlling New York law, Pivotal is only entitled to actual losses for a fraudulent inducement claim. Therefore, the Court grants the Motion with respect to the Fraudulent Inducement Claims on this alternative theory.

### B. WHETHER THE BREACH OF CONTRACT CLAIMS ARE TIMELY IS A QUESTION OF FACT.

The Court could not determine the accrual dates for the Breach of Contract Claims in connection with the motion to dismiss.[93] In Delaware, parties have a "reasonable" amount of time to perform the contract when the contract does not fix a time for its performance.[94] A reasonable time for performance "is ordinarily a question of fact."[95] Delaware courts can, however, decide reasonableness "on summary judgment in appropriate cases."[96] The party asserting a right based on a reasonable time period must provide evidence of what is a reasonable

---

[90] Def. Ex. 9 79-80 (Interrogatory Resp. 15).
[91] *See e.g.* Def. Ex. 51 6 ("TSG calculated that Pivotal incurred Financial Damages of $0.61 million CAD from the loss in Net Profit due to the lack of a viable Dynamic Currency Conversion product."); Def. Ex. 51 8, 32
[92] Def. Ex. 55 43:5-7.
[93] *See Pivotal Payments Direct Corp.,* 2015 WL 11120934, at *4.
[94] *Salisbury v. Credit Service*, 199 A. 674, 683 (Del. Super. 1937).
[95] *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *11 (Del. Ch. May 2, 2007) ("Whether a party to a contract performed within a reasonable time is ordinarily a question of fact and thus often inappropriate for resolution at the summary judgment stage").
[96] *Id.* (Citations omitted).

time to perform under the contract.[97]  For example, evidence of an oral agreement could be "evidence of what the parties considered would be a reasonable time for performance."[98]

The Court finds that neither party provided evidence with respect to what the parties considered a reasonable time for Planet to perform Sections 2.5 and 2.7 of the MCPA.  The parties merely reassert their arguments from the motion to dismiss.  Pivotal argues that it filed suit within the limitations period because Planet continuously breached the contract.[99]  Planet argues that the reasonable time for Planet to perform ran until the time that Pivotal admitted that it knew Planet failed to fulfill its obligations under the MCPA.[100]  Therefore, the Court will not grant summary judgment as to the statute of limitations and the Breach of Contract Claims because there is a genuine issue of material fact.

## V.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion in part and **DENIES** the motion in part.

Dated: November 30, 2020
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge


cc: File&ServeXpress

---

[97] *See id.* ("The issue is whether [the plaintiff] has satisfied its burden of presenting evidence from which a rational trier of fact could conclude that it performed within a reasonable time").
[98] *Gluckman v. Holzman*, 51 A.2d 458, 467 (Del. Ch. 1947).
[99] *See* Answer. Br. 24 (Pivotal maintains its position that Planet breached MCPA § 2.5 (Count 26) each time Planet failed to process a debit transaction and that Planet breached MCPA § 2.7 (Count 27) each time Planet failed to provide a newly boarded Pivotal merchant with an external pinpad).
[100] Opening Br. 34-35.